# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| ST. JOSEPH PARISH ST. JOHNS, *Plaintiff*, v. DANA NESSEL, in her official capacity as Attorney General of Michigan; JOHN E. JOHNSON, JR., in his official capacity as Executive Director of the Michigan Department of Civil Rights; PORTIA L. ROBERSON, ZENNA FARAJ ELHASON, GLORIA E. LARA, REGINA GASCO-BENTLEY, ANUPAMA KOSARAJU, RICHARD CORRIVEAU, DAVID WORTHAMS, and LUKE R. LONDO, in their official capacities as members of the Michigan Civil Rights Commission, *Defendants*. | Civil No. 1:22-cv-1154<br><br>**MOTION FOR LEAVE TO AMEND COMPLAINT** |

1

Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff St. Joseph's Parish St. Johns ("St. Joseph") hereby moves for leave to amend its First Amended Complaint (ECF No. 29). St. Joseph's proposed Second Amended Complaint ("SAC") is attached as Ex. 1. *See* W.D. Mich. L.R. 5.7(f). The SAC's accompanying exhibits are also attached. A proposed order granting St. Joseph's motion is attached as Ex. 2. As explained in the attached Certificate of Nonconcurrence (Ex. 3), Defendants do not consent to this motion.

For the reasons stated herein and in the accompanying brief (*see* W.D. Mich. L.R. 7.1(a)), St. Joseph's motion should be granted.

1. St. Joseph filed this action to protect its First Amendment rights. As a Roman Catholic parish and school, St. Joseph expects all its parishioners, employees, school families and students, and contracting partners to respect and uphold St. Joseph's Catholic identity. *See, e.g.*, SAC ¶¶ 35-54. This identity—and the many steps St. Joseph takes to preserve it—are caught in the crosshairs of a new provision of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").

2. On March 16, 2023, Governor Gretchen Whitmer signed into law an expansion of the ELCRA's discrimination prohibitions. SAC ¶ 79. Those prohibitions make it unlawful to distinguish on the basis of either

2

"sexual orientation" or "gender identity or expression" in employment, public accommodations, and educational facilities. *Id.* ¶ 80.

3.  In contrast with 22 other States, these new prohibitions were crafted intentionally without any religious accommodations that would protect from liability a religious organization's hiring decisions, enforcement of its conduct codes, or religious governance decisions. SAC ¶¶ 83-84.

4.  This lack of accommodation is the result of Defendants' efforts to insert into the ELCRA a prohibition on sexual orientation and gender identity discrimination. SAC ¶¶ 55-75. Indeed, Defendants urged the adoption of the new textual prohibitions "without any amendments that would seek to reduce their scope or impact.'" *E.g.*, *id.* ¶ 76 (quoting Michigan Civil Rights Commission). As Defendant Attorney General Nessel put it, "'[p]eople who choose to demean others or deny them employment, housing, educational opportunities, medical treatment or goods and services simply because of that persons [sic] sexual orientation or gender identity are not religious heroes, they are bigots.'" *Id.* ¶ 69 (citation omitted).

3

5. As Defendants urged, proposed religious accommodations to this expansion of the ELCRA were consistently rejected by the Michigan legislature. The lead Senate sponsor said it is not "'appropriate to allow the government to let religion discriminate against someone because of their sexual orientation or gender identity.'" SAC ¶ 77 (citation omitted). Another called religious accommodations a "'license to discriminate'" that is "'fundamentally wrong.'" *Id.* (citation omitted) A third Senator made the same point: "discrimination is never okay," so religious accommodation is not okay. *Id.* (citation omitted).

6. On March 16, the textual amendment to ELCRA was signed into law. SAC ¶ 79. Defendant Nessel celebrated the law's passage, reiterating that this legislation's goal is to "solidify[]" *Rouch World* so its conclusions "'cannot be easily overturned by a future court.'" *Id.* ¶ 78 (citation omitted). To Nessel, it was "'imperative'" to "'enshrine'" *Rouch World* expressly in the ELCRA, because "'high courts have succumbed to political pressure and overturned long-standing and even court-tested decisions like Roe v. Wade[.]'" SAC ¶ 8 (citations omitted). This goal meant Michigan must depart from 22 States and expressly refuse to accommodate religious entities. *See id.* ¶ 84.

7. By design then, Michigan's new amendment to the face of the ELCRA fails to recognize St. Joseph's religious "autonomy [to make] internal management decisions that are essential to the institution's central mission." *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020). While "a component of this autonomy is the selection of the individuals who play certain key roles," *id.*, many other essential religious decisions are infringed upon by the drying ink of the ELCRA's amendments. St. Joseph's Second Amended Complaint details them. *E.g.*, SAC ¶¶ 88-106, 112-119.

8. Michigan's new amendment to the ELCRA is the culmination of steps taken by Defendants to broaden the ELCRA's reach against religious entities like St. Joseph that are open to all. The decision to statutorily enshrine "a State-orthodoxy test that prevents Catholic believers from participating" raises serious First Amendment problems. *See Buck v. Gordon*, 429 F. Supp. 3d 447, 463 (W.D. Mich. 2019).

9. Accordingly, St. Joseph should have leave to amend its complaint to identify these and other problems that relate to the new, textual expansion of the ELCRA. "[T]he case law in this Circuit manifests liberality

5

in allowing amendments to a complaint." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (cleaned up).

10. St. Joseph's amendments comfortably satisfy the inquiries that courts consider when evaluating motions for leave to amend. That is: (1) The amended ELCRA was enacted after St. Joseph initially filed its complaint and after the time allotted for St. Joseph to freely amend its complaint had expired, so St. Joseph couldn't have added allegations about its passage earlier. (2) The SAC does not contain new legal theories and seeks the same relief as against the amended ELCRA that St. Joseph previously requested. (3) Granting the amendment does not cause undue delay or prejudice to any party. And (4), the textual amendment of the ELCRA only underscores St. Joseph's need for pre-enforcement relief.

11. For the foregoing reasons, and for those in the accompanying brief, "the leave sought should, as the rules require, be freely given." *Parchman*, 896 F.3d at 736 (internal quotation marks and citation omitted).

## CONCLUSION

Wherefore, St. Joseph requests that the Court grant leave to submit its proposed Second Amended Complaint.

Dated: March 30, 2023

Respectfully submitted,

s/ *William J. Haun*
Lori H. Windham
William J. Haun
Nicholas R. Reaves
The Becket Fund for Religious Liberty
1919 Penn. Ave. NW, Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

William R. Bloomfield (P68515)
Catholic Diocese of Lansing
Lansing, Michigan 48933-1122
(517) 342-2522
wbloomfield@dioceseoflansing.org

*Counsel for Plaintiff*