UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ST. JOSEPH PARISH ST.
JOHNS,

      Plaintiff,

v

DANA NESSEL, in her official capacity as
Attorney General of Michigan; JOHN E.
JOHNSON, JR., in his official capacity as
Executive Director of the Michigan
Department of Civil Rights; PORTIA L.
ROBERSON, ZENNA FARAJ ELHASON,
GLORIA E. LARA, REGINA GASCOT-
BENTLEY, ANUPAMA KOSARAJU,
RICHARD CORRIVEAU, DAVID
WORTHAMS, and LUKE R. LONDO, in their
official capacities and members of the
Michigan Civil Rights Commission,

      Defendants.

No. 1:22-cv-1154

HON. JANE M. BECKERING

MAG. PHILLIP J. GREEN

**DEFENDANTS' BRIEF IN
SUPPORT OF MOTION TO
DISMISS PURSUANT TO
FRCP 12(b)(1) AND (6)**

_____/

William J. Haun
Lori H. Windham
Nicholas R. Reaves
Attorneys for Plaintiff
The Becket Fund for Religious Liberty
1919 Penn. Ave. NW., Suite 400
Washington, DC 20006
202.955.0095
lwindham@becketlaw.org
whaun@becketlaw.org
nreaves@becketlaw.org

Tonya C. Jeter
Kimberly K. Pendrick
Attorneys for Defendants
3030 W. Grand Blvd., 10th Floor
Detroit, MI  48202
313.456.0067
jetert@michigan.gov
pendrickp@michigan.gov

_____/

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(1) AND (6)**

# TABLE OF CONTENTS

Page

Table of Contents ............................................................................................. i

Index of Authorities ....................................................................................... iii

Concise Statement of Issues Presented ..................................................... vii

Controlling or Most Appropriate Authority ............................................ viii

Introduction ...................................................................................................... 1

Statement of Facts .......................................................................................... 2

      A.    Applicability of the ELCRA to Plaintiff ............................................... 2

      B.    Current Michigan authority regarding gender identity and sexual orientation under the ELCRA. ...................................... 3

      C.    St. Joseph's claims ..................................................................... 7

Standard of Review ....................................................................................... 8

Argument ....................................................................................................... 10

I.     Plaintiff's claims are premature and thus not ripe for pre-enforcement review. ..................................................................... 10

      A.    In the pre-enforcement context, claims are not ripe where there is not a credible fear of enforcement and, even though ripeness is somewhat relaxed in the First Amendment context, allegations of a "chilling" effect are not a sufficient standalone basis to sustain claims of injury. ....................... 11

            1.    There is insufficient likelihood that the alleged harm will come to pass. ............................................... 13

            2.    The record is not sufficiently developed. ..................... 18

            3.    Plaintiff has not shown sufficient hardship absent judicial review at this time. .................................... 20

II.    Plaintiff cannot establish standing based on conjectural or hypothetical allegations of harm. .......................................... 23

A.      Standing requires concrete harm that is actual or imminent – not a mere subjective allegation of chill or a generalized grievance against government conduct. .................................................. 23

B.      Defendants have not taken – and will not imminently take – action that will harm Plaintiff. ........................................................... 28

1.      Plaintiff has not suffered an injury that is concrete, actual, and imminent. .................................................. 29

2.      Plaintiff cannot demonstrate an injury in fact that is fairly traceable to any action of Defendants. ............................ 33

III.    Plaintiff fails to state a Fourteenth Amendment claim. .................................. 38

IV.    This Court should decline to issue declaratory relief. ..................................... 39

Conclusion and Relief Requested ................................................................. 42

# INDEX OF AUTHORITIES

Page

**Cases**

*Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563 (6th Cir. 1995) .................. 11, 26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 9, 38

*Babbitt v. United Farm Workers Union*, 442 U.S. 289 (1979) ................................. 28

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) .................... 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 38

*Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154 (6th Cir. 1992) ...................... 11

*Bigelow v. Virginia*, 421 U.S. 809 (1975) .................................................................. 25

*Binno v. Am. Bar Ass'n.*, 826 F.3d 338 (6th Cir. 2016) ............................................. 24

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020) ................................................ 16, 34

*Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641 (6th Cir. 2004) ................. 24

*Clapper v. Amnesty Int'l. USA*, 568 U.S. 398 (2013) ........................................... 24, 26

*Clonara, Inc. v. State Bd. Of Educ.*, 442 Mich. 230 (1993) ....................................... 22

*Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477 (6th Cir. 2002) ............. 26

*Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007) ................................................................................................................ 40

*Glenn v. Holder*, 690 F.3d 417 (6th Cir. 2012) ......................................................... 37

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984) ......... 39

*In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009) ................ 9

*Kardules v. City of Columbus*, 95 F.3d 1335 (6th Cir. 1996) .................................... 33

*Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505 (6th Cir. 2006) ........................................ 11

*Laird v. Tatum*, 408 U.S. 1 (1972) ................................................................... *passim*

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................. 24

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469 (2d Cir. 1999) ...... 12, 18

*McLeod v. Providence Christian School*, 408 N.W.2d 146 (Mich. Ct. App. 1987) ................................................................................................................ 32

*Michigan Dept. of Civil Rights ex rel. Forton v. Waterford Tp. Dept. of Parks & Recreation*, 387 N.W.2d 821 (Mich. 1986) ............................................................ 7

*Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533 (6th Cir. 2010) ................................................................................................................ 12

*Miller v. City of Wickliffe*, 852 F.3d 497 (6th Cir. 2017) ............................................ 29

*Morrison v. Board of Educ. of Boyd County*, 521 F.3d 602 (6th Cir. 2009) ......... 26, 37

*Muhammad v. Paruk*, 553 F. Supp 2d 893 (E.D. Mich. 2008) ................................... 40

*Nat'l Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521 (10th Cir. 1994) ............. 26

*Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997) ....................... 11, 31

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002) ..................................................... 12

*Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990) ...................... 8

*Ouwinga v. Benistar*, *419 Plan Servs., Inc.*, 694 F.3d 783 (6th Cir. 2012) ................. 9

*Parsons v. United States Dep't of Justice*, 801 F.3d 701 (6th Cir. 2015) ................... 24

*Penthouse International, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991) ................... 37

*Peoples Rights Org. v. City of Columbus*, 152 F3d 522 (6th Cir. 1998) ..................... 28

*Plunderbund Media LLC v. DeWindek*, 312 F. Supp. 3d 654 (E.D. Mich., 2018) ............................................................................................................... 25, 34

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996) .......... 9

*Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918 (6th Cir. 2002) ................... 24

*Rouch World*, ___ N.W.2d ___ (Mich. 2022); 2022 WL 3007805 ....................... *passim*

*Rouch World, LLC v. Dep't of Civ. Rights*, unpublished order of the Court of Claims, entered December 7, 2020 (Case No. 20- 000145-MZ) ..................... *passim*

*Savoie v. Martin*, 673 F.3d 488 (6th Cir. 2012) ......................................................... 40

*Stoianoff v. Montana*, 695 F.2d 1214 (9th Cir. 1983) ................................................. 31

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)...........................................29

*United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C. Cir., 1984) ...........................................................................................25, 27

*United States v. Hays*, 515 U.S. 737 (1995) ...............................................25

*United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189 (6th Cir. 1988) .................................................................................................11

*Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624 (6th Cir. 2001)...........23

*Weishuhn v. Catholic Diocese of Lansing*, 756 N.W.2d 483 (Mich. Ct. App. 2008) ...................................................................................................7

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000).............................................26

*Younger v. Harris*, 401 U.S. 37 (1971) ....................................................12

## Statutes

Mich. Comp. Laws § 37.2101....................................................................1, 6

Mich. Comp. Laws § 37.2102(1) .............................................................3, 6

Mich. Comp. Laws § 37.2103(i) .................................................................3

Mich. Comp. Laws § 37.2201....................................................................2, 23

Mich. Comp. Laws § 37.2201(a) ...............................................................2

Mich. Comp. Laws § 37.2208.............................................................. *passim*

Mich. Comp. Laws § 37.2301....................................................................2

Mich. Comp. Laws § 37.2301(a) ...............................................................3

Mich. Comp. Laws § 37.2302(a) ...........................................................5, 31

Mich. Comp. Laws § 37.2401....................................................................2

Mich. Comp. Laws § 37.2403..........................................................7, 17, 19, 23

Mich. Comp. Laws § 37.2501....................................................................2

Mich. Comp. Laws § 37.2601............................................................3, 15, 32

Mich. Comp. Laws § 37.2602(c).............................................................13

Mich. Comp. Laws § 37.2705 ................................................................. 6, 17, 20

Mich. Comp. Laws § 37.2705(1) ................................................................. 6, 20

Mich. Comp. Laws § 761.1(r) ....................................................................... 15

**Other Authorities**

28 U.S.C. § 2201 ........................................................................... 28, 39, 40

28 U.S.C. § 2202 ..................................................................................... 28

**Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................... 8, 9, 42

Fed. R. Civ. P. 12(b)(6) .......................................................................... 9, 42

Fed. R. Civ. P. 8(a)(2) ......................................................................... vii, 38

Mich. Admin. Code, Rule 37.6 ................................................................... 30

**Constitutional Provisions**

Mich. Const. 1963, Art. I, § 2 ...................................................................... 3

Mich. Const. 1963, Art. V, § 29 ............................................................... 3, 15

U.S. Const., Art. III, § 2 ............................................................................ 24

## CONCISE STATEMENT OF ISSUES PRESENTED

1.      The ripeness doctrine is designed to ensure that the jurisdiction of the federal courts is limited to actual cases and controversies, not premature, abstract disagreements that may not occur, and while ripeness is somewhat relaxed in the First Amendment context, there nevertheless must be a credible fear that the anticipated action will occur. Here neither Attorney General Nessel, Executive Director Johnson, nor any of the Commission members have interfered with Plaintiff's church autonomy or business operations, let alone threatened to investigate, prosecute or take any enforcement action against Plaintiff because of its religious beliefs, policies or practices. Are any of Plaintiff's five counts ripe for judicial resolution?

2.      To establish standing, a party must show injury in fact, not just a generalized grievance against governmental conduct, and as for a First Amendment claim, a party must show a chilling effect that is actual and imminent, not just a subjective allegation of chilled speech. Here, Plaintiff relies on mere conjecture that someday in the future it may be investigated, prosecuted or subjected to enforcement actions based on its religious beliefs under the Elliott-Larsen Civil Rights Act. Has Plaintiff met the standing requirements to bring its First Amendment claims?

3.      A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Has Plaintiff sufficiently pleaded a Fourteenth Amendment claim?

4.      The issuance of declaratory relief rests within the sound discretion of the Court, where such relief would settle the controversy, serve a useful purpose, or provide for a better or more effective remedy. Here, declaratory relief would not settle the present controversy, and the state has an interest in the continued enforcement of its civil rights laws. Should this Court deny Plaintiff's request for declaratory relief?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

*United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189 (6th Cir. 1988)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

*Laird v. Tatum*, 408 U.S. 1 (1972)

*Peoples Rights Org. v. City of Columbus*, 152 F3d 522 (6th Cir. 1998)

*Savoie v. Martin*, 673 F.3d 488 (6th Cir. 2012)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

## INTRODUCTION

Plaintiff, St. Joseph Parish St. Johns (Plaintiff or St. Joseph), filed this lawsuit seeking declaratory and injunctive relief following the Michigan Supreme Court's recent decision in *Rouch World, LLC v. Dep't of Civ. Rights*, which held that sexual orientation discrimination is a violation of the State's Elliott-Larsen Civil Rights Act (ECLRA), Mich. Comp. Laws § 37.2101, *et seq.* That decision came two years after the Michigan Court of Claims held in the same case that gender identity discrimination violated the ELCRA. Both *Rouch World* decisions followed a 2018 Interpretive Statement issued by the Michigan Civil Rights Commission (Commission) determining that the ELCRA's "because of sex" provision prohibits discrimination based on sexual orientation and gender identity.

Plaintiff maintains that the ELCRA does not contain a religious exemption that permits Plaintiff to employ only individuals who share its same religious beliefs; allows it to enforce its code of conduct, religious policies, and other religious requirements as to its worshippers, employees and students; advertise its job openings; lets it recruit and select students who share its religious beliefs; and allows it to rent its facilities and participate in public benefit programs in accordance with its religious beliefs. (ECF No. 29, Amend. Compl., ¶¶ 7, 10, 12, 14-16, 42-45, 49-51, 80-82, 84, 91, 95, 111; PageID.275, 276, 277-278, 286, 288-301-304, 306, 308, 313-314.) Plaintiff's Amended Complaint can best be summarized as having one overarching claim: namely, that the ELCRA's protections violate its First Amendment rights by discouraging it from advancing its religious mission and ministry. (*Id..*, ¶18, Prayer for Relief; PageID.279, 328.)

But Plaintiff's Amended Complaint does not allege that it has been the subject of any civil rights complaint, let alone the target of an investigation, enforcement action, or prosecution by any of the named Defendants because of its religious beliefs—despite the fact that the ELCRA has been interpreted to protect against discrimination based on gender identity and sexual orientation since 2018. (*Id.*, ¶¶ 6, 53; PageID.274, 289.)  None of the named Defendants have pronounced that the ELCRA prohibits the free exercise of all religious rights or taken any action against Plaintiff to the contrary.  These facts underscore that the possibility of any future action or investigation against Plaintiff is purely speculative, and thus not ripe, and that there is no injury-in-fact to support standing on any claim.  As recently as March 29, 2023, this Court entered dismissal in a substantially similar case finding another religious entity lacked standing.  (1:22-cv-00787 PageID.854-877.)  Further, the lack of controversy and harm support a denial of declaratory and injunctive relief.

## STATEMENT OF FACTS

### A.    Applicability of the ELCRA to Plaintiff.

The ELCRA prohibits discrimination based on protected characteristics, including "sex," in employment, Mich. Comp. Laws § 37.2201, *et seq*., public accommodations, Mich. Comp. Laws § 37.2301, *et seq*., education, Mich. Comp. Laws § 37.2401, *et seq*., and housing, Mich. Comp. Laws § 37.2501, *et seq*.  Plaintiff, as a church and private parochial school, is subject to the ELCRA as an employer, Mich. Comp. Laws § 37.2201(a), and as an educational institution, Mich. Comp. Laws § 37.2401.  Whether Plaintiff is subject to the ELCRA as a "place of public

accommodation" depends on whether Plaintiff extends or offers services or facilities "to the public" under the particular facts and circumstances.  Mich. Comp. Laws § 37.2301(a).

### B.   Current Michigan authority regarding gender identity and sexual orientation under the ELCRA.

This case was spurred by recent decisions in Michigan that have made clear that the ELCRA provides protection against discrimination based upon gender identity and sexual orientation.  In order to provide the Court with the necessary context, these decisions are briefly summarized below.

#### 1.  The Commission's Interpretive Statement

The ELCRA has long provided protection from discrimination based upon "sex," but it did not specify whether the "because of . . . sex" language includes protection for individuals based upon sexual orientation or gender identity.  *See* Mich. Comp. Laws §§ 37.2102(1), 37.2103(i).

On May 21, 2018, the Commission[1] adopted Interpretive Statement 2018-1, in which it concluded that "sexual orientation" and "gender identity" fall within the meaning of "sex" as used in the ELCRA.  (ECF No. 29, Compl., ¶53; PageID.289-290.)  Noting analogous federal precedent, the Commission explained in its statement that:

> [T]he U.S. 6th Circuit Court of Appeals . . . ruled in the case of *EEOC v R.G. & G.R. Harris Funeral Homes, Inc.* that the same language "discrimination because of . . . sex" when used in federal civil rights

---

[1] The Commission was established by the Michigan Constitution of 1963 to carry out the guarantees against discrimination articulated in Article I, § 2. *See* Mich. Const. 1963, Art. I, § 2, Art. V, § 29.  The Commission's duties are established by law.  *See* Mich. Comp. Laws § 37.2601, *et seq.*

> law protected a transgender Michigan woman who was gender
> stereotyped and discriminated against for not behaving like a male. . . .

*See* Interpretative Statement 2018-1, (Ex. A).  Accordingly, the Commission found

"that continuing to interpret the protections afforded by the phrase 'discrimination

because of . . . sex' more restrictively by continuing to exclude individuals for

reasons of their gender identity or sexual orientation would itself be

discriminatory."  (*Id*.)

### 2.   *Rouch World, LLC v. Dep't of Civil Rights*

Subsequently, in the *Rouch World* cases, Michigan Courts concluded that the

"because of sex" language includes gender identity and sexual orientation.  *Rouch*

*World* was brought by Rouch World, LLC, a wedding venue that denied services for

a same sex wedding (sexual orientation discrimination), and Uprooted Electrolysis,

which denied hair removal services to a transgender woman (gender identity

discrimination) and sought declaratory and injunctive relief.[2]  *Rouch World*, ___

N.W.2d ___ (Mich. 2022); 2022 WL 3007805 at * 4-6.  Both entities asserted that the

provision of services would violate their religious beliefs.  In December 2020,

following the filing of a motion for summary judgment by the Department of Civil

Rights, the Michigan Court of Claims held that discrimination because of sex under

the ELCRA includes discrimination because of an individual's "gender identity,"

and granted relief in favor of the Department with regard to Uprooted Electrolysis's

---

[2] Rouch World and Uprooted Electrolysis were both the subject of complaints with
the Michigan Department of Civil Rights due to their failure to provide public
accommodations.  *See* Mich. Comp. Laws § 37.2602.  These administrative
complaints were stayed after the lawsuit was filed.

claim.  2022 WL 3007805 at *5.  However, on the basis of stare decisis, the court

denied summary disposition as to the sexual orientation claim.  *Id.*  Regarding

Rouch World's and Uprooted Electrolysis' First Amendment free exercise of religion

claim, the Court of Claims concluded that the issue had not "been sufficiently

briefed to resolve at this juncture."  *See Rouch World, LLC v. Dep't of Civ. Rights*,

unpublished order of the Court of Claims, entered December 7, 2020 (Case No. 20-

000145-MZ) p. 7, attached as Ex. B.  The plaintiffs did not seek to appeal the gender

identity ruling.

The Michigan Supreme Court granted the Department of Civil Rights'

(Department) bypass application challenging the Court of Claims' opinion that

"because of sex" under the ELCRA did not prohibit discrimination because of an

individual's sexual orientation.  *Rouch World, LLC*, 2022 WL 3007805 at * 6.  *See*

*also* 961 N.W.2d 153 (Mich. 2021).  Two years later, on July 28, 2022, the Michigan

Supreme Court held that discrimination on the basis of sexual orientation is

discrimination because of sex, and that the denial of "the full and equal enjoyment

of the goods, services, facilities, privileges, advantages, or accommodations" at a

"place of public accommodation or public service" on the basis of sexual orientation

is discrimination "because of . . . sex" in violation of § 302a of the ELCRA, Mich.

Comp. Laws § 37.2302(a).  *Rouch World, LLC*, 2022 WL 3007805 at *15.  The

Michigan Supreme Court remanded the case to the Court of Claims for further

proceedings consistent with its opinion.  *Id.*  On January 27, 2023, the Michigan

Court of Claims dismissed the case pursuant to stipulation by the parties, leaving

the Department free to process administrative complaints previously filed against Rouch World and Uprooted Electrolysis. *See* Ex. C.

### 3. The ELCRA is amended to include sexual orientation and gender identity or expression as protected categories.

On March 16, 2023, Governor Gretchen Whitmer signed into law Senate Bill 4, which amends the ELCRA, Mich. Comp. Laws § 37.2101, *et seq*., to expressly include sexual orientation and gender identity or expression as protected categories.[3]  These amendments will take effect on the 91st day following adjournment of the Legislature, Mich. Const. 1963, Art. IV, § 27, roughly a year from now.  In the interim, the *Rouch World* decisions will continue to govern interpretation of the term "sex" as used in the ELCRA.

### 4. The ELCRA's protection of other rights provided by law.

Section 705 of the ELCRA generally provides that the Act "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act."  Mich. Comp. Laws § 37.2705(1). With respect to the public accommodations provision, section 302 prohibits discrimination in the provision of a public accommodation "[e]xcept where permitted by law."  The "by law" language includes statutory, constitutional, and common law.

---

[3] Senate Bill 4 became Public Act 6 of 2023, which can be found at, 2023-PA-0006.pdf (mi.gov).  For example, section 102, as amended, provides "[t]he opportunity to obtain employment, . . .  the full and equal utilization of public accommodations, . . . and educational facilities without discrimination because of religion, race, color, national origin, age, sex, *sexual orientation, gender identity or expression*, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right."  Mich. Comp. Laws § 37.2102(1) (emphasis added), as amended.

*Michigan Dept. of Civil Rights ex rel. Forton v. Waterford Tp. Dept. of Parks &
Recreation*, 387 N.W.2d 821 (Mich. 1986).  In the employment context, the ELCRA
recognizes that discrimination based on a protected category may be permissible
where it is a "bona fide occupational qualification reasonably necessary to the
normal operation of the business[.]"  Mich. Comp. Laws § 37.2208.[4]  And with
respect to religious educational institutions, the prohibitions related to
discrimination in that Article based on religion do not apply.  Mich. Comp. Laws
§ 37.2403.

### C.   St. Joseph's claims

St. Joseph Parish St. Johns is a nonprofit corporation in the Catholic Diocese
of Lansing located in St. Johns, Michigan.  (ECF No. 29, Amend. Compl., ¶¶ 19, 32;
PageID.280, 282.)  St. Joseph operates a church and St. Joseph Catholic School,
which enrolls about 200 children between kindergarten and sixth grade and
employs individuals as teachers and in other staffing positions.  (*Id.*., ¶¶ 2, 34;
PageID.273, 283.)  St. Joseph also rents its facilities, namely its gymnasium and
recreational fields, and carries out parish activities and other events at the church,
such as Mass and hosting weddings and wedding receptions.  (*Id.*., ¶¶ 15-16, 51, 80-
81; PageID.278, 289, 301-302.)  St. Joseph alleges that events at its facilities are

---

[4] Michigan courts have also recognized that religious employers are protected by the
"ministerial exception" in the application of the ELCRA.  *See, e.g., Weishuhn v.
Catholic Diocese of Lansing*, 756 N.W.2d 483, 486 (Mich. Ct. App. 2008)
("The ministerial exception is a nonstatutory, constitutionally compelled exception
to the application of employment-discrimination and civil rights statutes to
religious institutions and their 'ministerial' employees.")

open to the public.  (*Id*.)  St. Joseph additionally participates in public benefit programs. (*Id*.)

Plaintiff sued Attorney General Dana Nessel, John E. Johnson, the Executive Director of the Department of Civil Rights, and Commission members Portia L. Roberson, Zenna Faraj Elhasan, Gloria E. Lara, Regina Gasco-Bentley, Anupama Kosaraju, Richard Corriveau, David Worthams and Luke R. Londo, in their official capacities. P laintiff brings five causes of action alleging that the enforcement of the accommodations, education, employment, notice and publication provisions in the ELCRA violate the First Amendment to the U.S. Constitution by infringing on Plaintiff's religious beliefs.  (*Id*., ¶¶ 9, 18, 77, 82, 88, 90-91, 95, 111, Prayer for Relief; PageID.275, 279, 300, 303, 305, 306, 308, 313-314, 328.)

Plaintiff is requesting the same relief in four of its counts: injunctive and declaratory relief as to the disputed ELCRA provisions.  (*Id*.., ¶¶ 131, 141, 155, 161, Prayer for Relief; PageID.320, 322, 326, 327.)  Plaintiff further requests costs and attorneys' fees.  (*Id*., Compl., ¶ Prayer for Relief; PageID.328.)

## STANDARD OF REVIEW

This Court must dismiss a complaint if it lacks jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When reviewing a motion to dismiss under Rule 12(b)(1) that attacks the factual basis of the Court's jurisdiction, rather than the facial deficiency of the complaint, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  Further,

because the Court's "very power to hear the case" is at issue, the trial court "is free

to weigh the evidence and satisfy itself as to the existence of its power to hear the

case." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir.

1996).  No presumptive truthfulness attaches to a plaintiff's allegations, and

disputed material facts will not preclude a court from evaluating the merits of

jurisdictional claims.  *Id*.  Under Fed. R. Civ. P. 12(b)(1), a plaintiff has the burden

of proof.  *Id*.

Under Rule 12(b)(6), a court must dismiss a complaint for "failure to state a

claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In assessing a

complaint for failure to state a claim, a court must determine whether the

complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." *Ouwinga v. Benistar*, *419 Plan Servs., Inc.*, 694

F.3d 783, 790 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)).  The Court "need not accept as true legal conclusions or

unwarranted factual inferences, and [c]onclusory allegations or legal conclusions

masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n

Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (alteration in original) (citation

omitted) (internal quotation marks omitted).  When a court is presented with a Rule

12(b)(6) motion, it may consider the complaint and any exhibits attached thereto,

public records, items appearing in the record of the case and exhibits attached to

defendant's motion to dismiss so long as they are referred to in the Complaint and

are central to the claims contained therein.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## ARGUMENT

### I.    Plaintiff's claims are premature and thus not ripe for pre-enforcement review.

Plaintiff alleges that the current interpretation of the term "sex" in the ELCRA to include sexual orientation and gender identity "threatens [its] freedom to continue its religious mission of cultivating a Catholic community . . . in both word and deed" and "threatens [it] with enforcement actions for adhering to [its] religious obligations and [its] religious exercise."  (ECF No. 29, Amend. Compl., ¶¶ 8, 84, 153; PageID.275, 303-304, 326.)  It further alleges that this interpretation threatens its religious mission in terms of its education, employment, and accommodations decisions and in how it serves and/or interacts with its employees, volunteers, parishioners, students, and the public.  (*Id.*, ¶¶ 3, 9, 11, 14; PageID.273, 275, 275-277.)  Plaintiff also alleges that the ELCRA now hinders its ability to advertise, recruit and select students, hire staff, comply with the Diocese of Lansing's updated hiring guidelines, and participate "on equal footing in public programs."  (*Id.*, ¶¶ 12, 16, 91, 104, PageID.276, 278, 307, 311.)

But, because Plaintiff has not demonstrated a credible threat or substantial risk that it will be investigated, prosecuted, or that any enforcement action will be taken under the ELCRA against it, its claims are not ripe for review.

A.   **In the pre-enforcement context, claims are not ripe where there is not a credible fear of enforcement and, even though ripeness is somewhat relaxed in the First Amendment context, allegations of a "chilling" effect are not a sufficient standalone basis to sustain claims of injury.**

The ripeness doctrine, like the standing doctrine discussed below, originates from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies. *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992). The doctrine is "designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505, 509 (6th Cir. 2006) (citation omitted). Questions of ripeness arise in those cases "'anchored in future events that may not occur as anticipated, or at all.'" *Id.* (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294 (6th Cir. 1997)). Indeed, "a claim does not become ripe at the first whiff of governmental insensitivity or whenever a government official takes an adverse legal position against someone, even if one potential response is to curtail protected activities." *Ky. Press Ass'n, Inc.*, 454 F.3d at 540.

Generally, ripeness is evaluated according to three factors:

(1) the "likelihood that the harm alleged by [the] plaintiffs will ever come to pass," *United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir. 1988);

(2) "whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims," *Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563, 568 (6th Cir. 1995); and,

(3) the "hardship to the parties if judicial relief is denied at [this] stage" in the proceedings, *Cyclops Corp.*, 860 F.2d at 195.

11

And "[a]lthough the ripeness requirement is somewhat relaxed in the First Amendment context, there nonetheless must be a credible fear of enforcement." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citing *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 479 (2d Cir. 1999)).

Even in the First Amendment context, a chilling effect "has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Younger v. Harris*, 401 U.S. 37, 51 (1971); *see* also *Marchi*, 173 F.3d at 479 (holding that anti-abortion activists' as-applied challenge to Freedom of Access to Clinic Entrances Act was not ripe for review because they did not show that the alleged "pattern of activity" would ever come to pass). Instead, courts "look at each case to determine the consequences of staying . . . [its] hand." *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010).  In a First Amendment pre-enforcement challenge, the inquiry usually focuses on how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute.  *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citing *Nat'l Rifle Ass'n*, 132 F.3d at 285).

Here, although Plaintiff requires its congregation, volunteers, teachers, staff, students, and parents and legal guardians of students attending its school to "support and advance" and "to uphold" Catholic teachings and policies regarding human sexuality, (ECF No. 29, Amend. Compl., ¶¶ 3-4, 14, 37-45, 50; PageID.273, 277, 284-286, 288), expects the public renting facilities to respect the Catholic environment, and expects to not surrender its Catholic identity when participating

12

in public benefit programs, (*id.*, ¶ 51; PageID.289), it has not demonstrated an

imminent threat of investigation, prosecution, or any enforcement action.  Plaintiff

does not meet any of the factors required to demonstrate ripeness.

### 1.   There is insufficient likelihood that the alleged harm will come to pass.

There is no indication that Plaintiff will be targeted for disfavored treatment

or that its speech or association will be chilled.  There is certainly no indication that

any of the Defendants have interfered with—or ever contemplated interfering

with—St. Joseph's religious mission, church autonomy, employment and business

practices, or its internal management.  At this juncture, Plaintiff's Amended

Complaint contains only abstract allegations anchored in future events that might

not occur at all—or might occur differently than it anticipates.

The Department of Civil Rights is charged with receiving, initiating,

conciliating, adjusting, disposing of, issuing charges, and holding hearings on

complaints alleging a violation of the ELCRA.  Mich. Comp. Laws § 37.2602(c).  But

here, no complaint has been filed with the Department against Plaintiff.  Nor does

the Amended Complaint allege that anyone has threatened to file such a complaint.

Additionally, despite the complaint's many paragraphs outlining the perceived

burdens of the Department's investigatory process and that 73 complaints alleging

sexual orientation or gender identity discrimination were investigated[5] by the

Department following the adoption of Interpretative Statement 2018-1, (*id.*, ¶¶ 117-

---

[5] Of note, the fact that a complaint is filed is not an indication that the complaint
proceeded to an investigation.

122; PageID.316-317), neither the Commission nor the Department has sua sponte or responsively initiated or threatened to initiate a complaint or an investigation of St. Joseph's church or school—or any other religious ministry or provider—based on the Michigan Supreme Court's recent decision in *Rouch World, LLC*, 2022 WL 3007805 at *15 holding that the language "because of sex" in the ELCRA includes discrimination on the basis of sexual orientation or the Michigan Court of Claims' holding that "sex" includes gender identity.  And more telling, neither the Commission nor the Department has sua sponte or responsively initiated or threatened to initiate a complaint or an investigation of St. Joseph's church or school—or any other religious ministry or provider—*prior to* the *Rouch World* decisions despite, as correctly pointed out by Plaintiff, the Commission's issuance of its Interpretive Statement five years ago.  (ECF No. 29, Amend. Compl., ¶¶ 55-59, 184; PageID.291-292.)

In fact, Plaintiff does not assert that any of those 73 complaints involved a similarly situated church or religiously affiliated school, or that any of those 73 complaints resulted in the denial of religious exemptions to a church or religiously affiliated school.  Further, while Plaintiff's complaint alleges that sex discrimination complaints more than doubled from 2018 to the present, they provide no information to this Court regarding the nature of the sex discrimination complaints, whether they are related to sexual orientation or gender identity, or whether they involve religious entities.  While Plaintiff intimates that the increase must be related to sexual orientation and gender identity claims after the

Commission's 2018 interpretive statement, this is pure speculation.  It also ignores that the women's "Me Too" movement was also underway during this timeframe.

Likewise, Plaintiff alleges that the Attorney General has the authority to "administer, enforce, and prosecute Michigan's criminal laws, including Michigan's public accommodation laws." (*Id.*., ¶ 20, PageID.280).[6]  But the ELCRA is not a criminal statute.  Further, the Attorney General does not enforce the ELCRA.  Jurisdiction to enforce the ELCRA lies with the Michigan Civil Rights Commission.  Mich. Const. 1963, Art. V, § 29; Mich. Comp. Laws § 37.2601.  In addition to lacking jurisdiction to "administer, enforce, and prosecute" the ELCRA, Attorney General Nessel has not threatened any action against St. Joseph or any other entity— religious or otherwise—under that law.  Similarly, as the legal representative of the Department and Commission in courts of law, the Attorney General has taken no actions against Plaintiff, *ever*.  Nor has Attorney General Nessel made public pronouncements—even during her oral argument to the Michigan Supreme Court as attorney for the Commission in *Rouch World*—about how including sexual orientation and gender identity as protected categories under the ELCRA would interface with religious rights or whether the ELCRA was amenable to any religious exemptions.

Her support for a multi-state amicus filed in *Bostock v. Clayton County*, 2019 WL 2915040, expressed the position that discrimination "because of sex" likewise

---

[6] Plaintiff cites to Mich. Comp. Laws §§ 761.1(r) and 767.40, but neither pertain to civil rights or public accommodations.  (ECF No. 29, Amend. Compl., ¶ 20, PageID.280.)

prohibits discrimination based on sexual orientation and gender identity (a position that was ultimately embraced by the U.S. Supreme Court); but it did not discuss the issue of religious exemptions.  (ECF No. 29, Amend. Compl., ¶ 63; PageID.293-294.) In the same way, her support for a multi-state amicus filed in *State of Tennessee, et al. v. Department of Education, et al.*, No. 22-5807 (6th Cir.), concerned the federal guidance issued by the Department of Education and the Equal Employment Opportunity Commission construing Title VII and Title IX to protect LGBTQ students and workers from discrimination based on the U.S. Supreme Court's holding in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).  But, as in the case with the multi-state amicus filed in *Bostock*, it too did not discuss the issue of religious exemptions.  (ECF No. 29, Amend. Compl., ¶ 64; PageID.294.)

Further, Plaintiff's selective statements of Attorney General Nessel in press releases or in news articles following the *Rouch World* decision or the recent amendments never expressed a position, one way or the other, regarding religious exemptions.  Nor does St. Joseph's cherry-picking of her statements, to attribute an anti-religion viewpoint to her, constitute a policy of targeting religious entities such as St. Joseph.  (*Id.*, ¶¶ 66, 69, 71, 74-75; PageID.294-295, 296-297, 298-299.) Contrary to Plaintiff's claims, the Attorney General has never indicated that the ELCRA's inclusion of sexual orientation and gender identity as protected categories would prohibit religious schools or churches from operating consistently with their religious teaching on human sexuality.  In addition, the Attorney General's statements that Michigan's civil rights laws may not be used to discriminate

against citizens based on sexual orientation and gender identity—without any reference to religious freedoms—does not single-out or target St. Joseph, nor are they improper.  Her statements, taken as a whole, do not demonstrate that St. Joseph has been harmed or faces an *actual* imminent threat based on any actual action taken by the Attorney General.  Especially where she has no investigative or enforcement authority under the ELCRA.

By the same token, Plaintiff's selective statements from the Commission commenting on the *Rouch World* decision wherein the Michigan Supreme Court agreed with its interpretation of the ELCRA, or its resolution supporting the codification of that decision into law, does not demonstrate that St. Joseph has been harmed or faces an imminent threat based on any *actual* action taken by the Commission or the Department.  (*Id.*, ¶¶ 70, 73; PageID.297, 298.)  More importantly, those statements do not express an actual executed departmental policy restricting or denying religious exemptions under the ELCRA, as directed by the Commission, to St. Joseph or any other church or religious organization.  Indeed, both the Commission and the Department have operated with the understanding that the ELCRA already provides for religious exemptions.  *See* Mich. Comp. Laws §§ 37.2208, 37.2403, 37.2705.

Nor does Plaintiff's citation of selective statements from a few members of the Michigan Senate when considering the recent amendments to the ELCRA establish that St. Joseph or any religious entity has been harmed or faces an imminent threat by the named Defendants.  (ECF No. 29, Amend. Compl., ¶ 74;

PageID.298-299.)  And, despite Plaintiff's insinuation of some nefarious purpose for the Department's recent amendments to its administrative rules, Plaintiff cannot demonstrate that those rules were amended for the purpose of targeting St. Joseph—or any religious organization.  (*Id..*, ¶¶ 71, 72; PageID.297-298.)

In fact, regarding the rules that Plaintiff specifically takes issue with, the administrative rules addressing the complaint process and the bona fide occupational qualification (BFOQ) exemption, Plaintiff cannot demonstrate that it is (or has ever been) the subject of a civil rights complaint, nor that it has requested or ever been denied a BFOQ exemption.  Rather, Plaintiff makes clear in its Amended Complaint that it has not sought—and does not intend to seek—a BFOQ exemption because "its constitutional rights don't turn on asking for one."  (*Id.*, ¶ 103; PageID.310.)

Because Plaintiff's Amended Complaint remains a panoply of assumptions and conjecture, Plaintiff cannot demonstrate that it has been harmed or that any alleged harm to it by the Commission and Department Defendants or the Attorney General is imminent.

### 2.     The record is not sufficiently developed.

There are insufficient facts to allow for adjudication.  *See Marchi*, 173 F.3d at 478 (finding claim unripe when it "would be forced to guess at how [the defendant] might apply the . . . directive).  In the employment context, St. Joseph's request for relief forces this Court to speculate on things such as whether St. Joseph would be granted a BFOQ exemption under the ELCRA if it exercised its option to apply for

one—which it has thus far not done.  *See* Mich. Comp. Laws § 37.2208.  The Amended Complaint acknowledges that "the Department may make individualized exemptions for employers who 'apply to the commission for an exemption' and make a 'sufficient showing' 'that religion . . . is a bona fide occupational qualification reasonably necessary to the normal operation of the business or enterprise.'"  (ECF No. 29, Compl., ¶ 102; PageID.310.)  Yet, this is a possible administrative remedy available to St. Joseph of which it has chosen not to avail itself.  (*Id.*, ¶¶ 103; PageID.310.)  And, while Plaintiff now alleges that the five-year expiration period of a BFOQ exemption is "impractical and burdensome," it is certainly appropriate to reexamine a BFOQ exemption in cases where the need to use a BFOQ has changed over time or in cases where it may be necessary to withdraw a BFOQ that is being improperly used.[7]  (*Id.*)

Similarly, in the educational context, St. Joseph's request for relief forces this Court to speculate as to whether St. Joseph would be granted an exemption to "recruit and select students based on agreement with Catholic religious beliefs " given that the ELCRA unambiguously exempts a religious education institution, "which limits admission or gives preference to an applicant of the same religion" from the prohibited practices requirements or whether the Commission and Department would take any action based upon its teachings.  (*Id.*, ¶ 103; PageID.311.)  See Mich. Comp. Laws § 37.2403.

[7] The Commission's previous practice was that BFOQs expired after five years.  The recent rule change simply codified the pre-existing practice.

19

In addition, in both the educational and accommodations context, St. Joseph forces this Court to speculate on whether any of its students, worshippers or members of the public would request or seek to use its services or facilities in a manner in contravention to its religious beliefs or whether St. Joseph would be denied participation in a public program[8] because of its religious beliefs.  And it forces this Court to speculate as to how the Commission, if it did launch an investigation based on complaints or reports of discrimination based on sexual orientation or gender identity would choose to address religious rights in relation to the ELCRA based on the Act's specific caution that it "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act."  Mich. Comp. Laws § 37.2705(1).  Again, the Commission has not put out an interpretive statement or otherwise opined on these issues.  Neither has Attorney General Nessel.

### 3. Plaintiff has not shown sufficient hardship absent judicial review at this time.

At this time, there is no evidence that St. Joseph will suffer a hardship if judicial review is denied.  Given that no action has been taken against it, no investigation launched or threatened, no complaint filed against it with the Department, and there is no indication that the Attorney General is poised to

---

[8] While Plaintiff's complaint contains allegations regarding funding and public programs, none of the Defendants named in this Complaint have authority or oversight over the public programs or funding referenced in the Complaint, nor is it administered under the ELCRA.

pursue any action, Plaintiff's alleged hardships are too speculative to support judicial review.

Contrary to allegations in Plaintiff's Amended Complaint, Michigan law has not been definitively interpreted to prohibit the kinds of activities St. Joseph alleges to be at risk.  In the education arena, for example, St. Joseph cites no Michigan cases interpreting Michigan law as prohibiting a religious educational institution from inquiring about prospective and current students religious beliefs; recruiting and selecting students that share its religious beliefs, or, in the alternative, declining those who do not; enforcing its policies and religiously-motivated conduct standards; requiring parents and/or legal guardians of students to uphold the religious mission; or, advertising and/or publishing materials about its religious-based expectations.  (ECF No. 29, Amend. Compl., ¶¶ 98, 111; PageID.309, 313.)

In the employment arena, St. Joseph cites no Michigan cases interpreting the ELCRA as prohibiting a religious employer who meets the BFOQ criteria from asking prospective employees about whether they can abide by certain beliefs; seeking, recruiting, and hiring employees who agree with certain religious beliefs; requiring hires comply with certain religious beliefs; or posting employment opportunities that indicate a desire to hire employees who share certain beliefs. (*Id.*., ¶¶ 91, 95; PageID.306, 308.)  And, in the accommodations arena, St. Joseph cites to no Michigan cases interpreting the ELCRA as prohibiting it from requiring that its facilities be used in accordance with its religious beliefs; requiring it to make statements contrary to its religious teachings; disallowing it from publishing

21

its religious teachings; or, barring it from participation in any public programs because of its religious beliefs.  (*Id.*, ¶80, 84, 85; PageID.301-302, 303-304, 305.) The absence of state precedent addressing religious exemptions under the ELCRA post-*Rouch World* further lessens the possibility of an impending investigation or enforcement action and underscores that this lawsuit is premature.

St. Joseph can continue to advance its religious mission "of cultivating a Catholic community to Church teaching in both word and deed" through its education, employment, and public accommodations practices, if any, without losing its opportunity to file a future lawsuit if specific action is taken against it.  In the meantime, it can await a future case where Michigan courts grapple with the question the Michigan Supreme Court left unanswered in *Rouch World* (due to the plaintiff's failure to preserve the issue of religious rights for appellate review).  And if it is unsure of how the Commission will apply the Michigan Supreme Court's interpretation in *Rouch World,* it can request an interpretive statement.[9]  Mich. Admin. Code, R 37.23, and *Clonara, Inc. v. State Bd. Of Educ.,* 442 Mich. 230, 240 (1993)("agencies have the authority to interpret the statutes they are bound to administer and enforce.")  Finally, nothing is preventing St. Joseph from filing an application for a BFOQ exemption under Mich. Comp. Laws § 37.2208 and it has an

---

[9] Defendants recognize that the jurisdiction of the Department of Civil Rights and the state circuit courts is concurrent, and that "an individual may proceed simultaneously in both forums when asserting an employer's violation of the act." *Walters v. Dep't of Treasury*, 385 N.W.2d 695, 698 (1986) (internal citations omitted).  But that contemplates a ripe claim—an assertion of a violation of the ELCRA—and does not convert unripe claims into ripe ones.

exemption under Mich. Comp. Laws § 37.2403 as a religious educational institution
for purposes of "recruit[ing] and select[ing] students based on agreement with
Catholic religious beliefs."  (*Id.*, ¶¶ 102, 103; PageID.310-311.)

## II.   Plaintiff cannot establish standing based on conjectural or hypothetical allegations of harm.

St. Joseph alleges that provisions in the ELCRA, Mich. Comp. Laws
§ 37.2201 *et seq.*, violate its First Amendment rights, both facially and as applied,
by chilling or compelling its speech, by violating its religious autonomy, and by
violating its freedom of expressive association, assembly, free exercise of religion,
and the Establishment Clause.  St. Joseph further alleges violations under the First
Amendment based on its status as a religious organization or its use of public funds.
And, it alleges these violations could result in harm to be incurred in the future and
seeks declaratory and injunctive relief.

Before reaching the merits of these claims, St. Joseph must first demonstrate
Article III standing.  But St. Joseph lacks standing to bring its First Amendment
claims because these claims are not certainly impending and are unsubstantiated.

### A.   Standing requires concrete harm that is actual or imminent – not a mere subjective allegation of chill or a generalized grievance against government conduct.

This Court has an independent duty to make sure that the plaintiff has
standing to bring an action before addressing the merits of the case.  *Ward v.
Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001) ("Standing
is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to

deprive a court of jurisdiction.") (citations omitted).  "If a party does not have

standing to bring an action, then this Court has no authority to hear the matter and

must dismiss the case." *Binno v. Am. Bar Ass'n.*, 826 F.3d 338, 344 (6th Cir. 2016)

(internal citation omitted).

Article III gives federal courts the authority to resolve cases and

controversies.  U.S. Const., Art. III, § 2.  The party bringing the case or controversy

must establish standing to sue.  *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 408

(2013); *Parsons v. United States Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015).

"The burden of establishing standing is on the party seeking federal court action."

*Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002) (citing

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

> To establish Article III, constitutional standing, a plaintiff must show:
>
> (1) it has suffered an injury in fact that is (a) concrete and
>     particularized and (b) actual and imminent, not conjectural or
>     hypothetical;
>
> (2) the injury is fairly traceable to the challenged action of the
>     defendant; and,
>
> (3) it is likely, as opposed to merely speculative, that the injury will be
>     redressed by a favorable decision.

*Id*. (quoting *Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th

Cir. 2004)).  "Although 'imminence' is concededly a somewhat elastic concept, it

cannot be stretched beyond its purpose, which is to ensure that the alleged injury is

not too speculative for Article III purposes – that the injury is 'certainly

impending'." *Lujan*, 504 U.S. at 564, n.2.  The elements of Article III standing are

not simply pleading requirements.  *Id*. at 561.  "[E]ach element must be supported

in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

It is well-established that, in establishing an injury in fact, "[a] generalized grievance against governmental conduct is insufficient to confer standing upon a party." *Id.* (citing *United States v. Hays*, 515 U.S. 737, 743 (1995).)  For this reason, plaintiffs bringing First Amendment claims "must present more than 'allegations of a subjective chill.'" *Bigelow v. Virginia*, 421 U.S. 809, 816-17 (1975) (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).)  *See United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378; 238 U.S. App. D.C. 229 (D.C. Cir., 1984) ("All of the Supreme Court cases employing the concept of 'chilling effect' involve situations in which the plaintiff has unquestionably suffered some concrete harm (past or immediately threatened) apart from the 'chill' itself.")  "Allegations of a subjective 'chill' are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm[.]" *Laird*, 408 U.S. at 13–14.

Standing requires "a 'claim of specific present objective harm or a threat of specific future harm'." *Id.*; *see also Plunderbund Media LLC v. DeWindek*, 312 F. Supp. 3d 654, 662 (E.D. Mich., 2018.)  And "[t]o satisfy the injury in fact requirement on an allegation of chilled speech, the repercussions responsible for the chilling effect must be imminent." *Plunderbund Media*, 312 F. Supp. 3d at 662; *Parsons*, 801 F.3d at 710 (noting that "imminent" means "'certainly impending,' in contradistinction to 'allegations of possible future injury'") (quoting *Clapper v.*

*Amnesty Int'l.*, 568 U.S. 398, 409 (2013).)  Further, the "chill" on First Amendment

expression normally stands as the "reason why the governmental imposition is

invalid rather than as the harm which entitles [a party] to challenge it."  *Adult*

*Video Ass'n*, 71 F.3d at 566 (citing *United Presbyterian Church in the U.S.A.*, 738

F.2d at 1378.)

Caselaw is instructive in understanding that where a subjective allegation of

chill is alleged, "something more" is needed, such as the issuance of a temporary

restraining order, *Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 482-

83 (6th Cir. 2002), an eight-month investigation into the activities and beliefs of the

plaintiffs by government officials, *White v. Lee*, 227 F.3d 1214, 1226, 1228 (9th Cir.

2000), or "numerous alleged seizures of membership lists and other property"

belonging to plaintiffs, *Nat'l Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521,

1530 (10th Cir. 1994).

In *Morrison v. Board of Educ. of Boyd County*, the Sixth Circuit held that

subjective chill alone is insufficient to establish standing.  521 F.3d 602, 608 (6th

Cir. 2009.)  Morrison was a high school student and Christian who believed that his

religion required him to tell gay students that their sexual orientation was a sin.

*Id.* at 605.  His high school had a written policy prohibiting students from making

potentially harassing and derogatory statements to students based on sexual

orientation.  Morrison alleged that the written policy chilled his speech because he

feared of being punished.  *Id.*  After the filing of the lawsuit, the school board

modified its policy to permit anti-gay speech unless it was "sufficiently severe or

pervasive that it adversely affects a student's education or creates a climate of hostility or intimidation for that student, both from the perspective of an objective educator and from the perspective of the student at whom the harassment is directed." *Id.* at 607. The Court held that Morrison did not have standing. *Id.* at 608. The Court reasoned that "the record [was] silent as to whether the school district threatened to punish or would have punished Morrison for protected speech in violation of its policy." *Id.* The Court declined to find standing where Morrison's claim was based solely on apprehension without any specific action by the school board that supported that punishment would result.

Likewise in *Laird v. Tatum*, the Court found that a plaintiff's knowledge of government surveillance and the fear that the government might take some future action using that information, by itself, does not create an actual or imminent injury-in-fact for standing purposes. 408 U.S. at 13-14; *United Presbyterian Church*, 738 F.2d at 1379-80. The Court concluded that the harm alleged resulted from the plaintiffs' confluence of subjective perceptions, beliefs, and apprehensions that the government might, at some future date, misuse the information gained in a way that would cause direct harm. *Id.* at 13. Without more, such as an "exercise of governmental power [that] [is] regulatory, proscriptive, or compulsory in nature," this was insufficient to establish standing. *Id.* at 13-14.

**B.      Defendants have not taken – and will not imminently take – action that will harm Plaintiff.**

In this case, there are two aspects of the standing doctrine in dispute:

(1) Plaintiff has not suffered an injury in fact as required by Article III and

(2) Plaintiff cannot allege an injury that is fairly traceable to the Defendants'

actions.

Plaintiff seeks pre-enforcement relief under the Declaratory Judgment Act,

28 U.S.C. § 2201, 28 U.S.C. § 2202.  (ECF No. 29, Amend. Compl., ¶ 30;

PageID.281.)  A declaratory judgment action brought prior to the completion of an

injury in fact is proper if the plaintiff can "demonstrate actual present harm or a

significant possibility of future harm[.]"  *Peoples Rights Org. v. City of Columbus*,

152 F3d 522, 527 (6th Cir. 1998) (citing *National Rifle Ass'n*, 132 F.3d at 279).  In

other words, an individual need not "await the consummation of threatened injury

to obtain preventive relief."  *Peoples Rights Organization*, 152 F.3d at 527.  The

injury must only be "certainly impending."  *Id.* (citing *Babbitt v. United Farm

Workers Union*, 442 U.S. 289, 298 (1979)).

Here St. Joseph alleges that ELCRA's Education, Employment, Notice,

Accommodation, and Publication Clauses "chill" it from exercising its constitutional

rights.  (ECF No. 29, Amend. Compl., ¶¶12-13, 17, 98, 137-138, 146, 153;

PageID.276-279, 309, 321, 324, 326.)  Plaintiff asserts that those provisions (1) deter

it from engaging in religious exercise in violation of the First Amendment, and

(2) deter its right to church autonomy, freedom of speech, expressive association,

and assembly in violation of the First Amendment.  (*Id.*, ¶¶ 132-161; PageID. 320-

327.)  But Plaintiff cannot establish an injury-in-fact for any of its claims.  Nor can Plaintiff establish that any alleged injury is traceable to the actions of Defendants.

### 1.    Plaintiff has not suffered an injury that is concrete, actual, and imminent.

Where a plaintiff seeks prospective relief, such as declaratory relief or an injunction, the Supreme Court has strictly construed the nature of the injury-in-fact—looking for the plaintiff to articulate a concrete harm that would not occur but for the defendant's action.  In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014), the Supreme Court held that the injury must be "concrete and particularized," "actual and imminent," and not "conjectural or hypothetical."  Then, in *Miller v. City of Wickliffe*, 852 F.3d 497, 505-07 (6th Cir. 2017), the Sixth Circuit affirmed the district court's ruling that plaintiffs lacked standing to bring a pre-enforcement facial challenge to an ordinance because the threat of enforcement of the law was not sufficiently imminent.

The standing question comes down to whether Plaintiff can show a credible threat of investigation or charge.  As with the case in *Wickliffe*, the threat of enforcement of the ELCRA's alleged offensive provisions are not "sufficiently imminent" against Plaintiff.  Plaintiff has not been investigated or charged with violating the ELCRA by the Commission or Department. And there is nothing alleged in Plaintiff's Complaint to indicate that it is likely to be investigated by the Commission or Department under the ELCRA anytime in the foreseeable future. Further supporting the unlikeliness of St. Joseph sustaining an injury in fact,

Plaintiff does not allege a history of past enforcement of the ELCRA against it.
Plaintiff has not received any enforcement warning actions from the Department;
and Plaintiff has never been requested to respond to any civil rights complaint
naming it as a respondent.

Similar to *Laird*, Plaintiff's allegations are based on fears that are not
grounded in actual reality. To date, there have been no complaints lodged against
St. Joseph in any of its capacities. And, even if a complaint is someday filed with the
Department, that does not guarantee the Department will authorize the complaint,
let alone conduct a full-blown investigation.  See Mich. Admin. Code, Rule 37.6.

Here, Plaintiff cannot establish an injury-in-fact.  And, following the
rationale in *Laird*, Plaintiff's reliance on the *Rouch World* case to establish
foreseeable harm is misplaced—and conjecture.  *Rouch World* was remanded to the
Michigan Court of Claims.  *Rouch World*, 2022 WL 3007805 at *15.  And, since
then, the case has been dismissed. See Ex. C.  Simply put, this case is not fit for
adjudication.  As of the filing of this Amended Complaint, Plaintiff cannot even
show a threatened, much less an actual or imminent, investigation or enforcement
action against it by the Commission or Department under the ELCRA.  And
Plaintiff simply fails to allege any threatened action by the Attorney General who,
again, has no investigative or enforcement authority under the ELCRA.

Notably, Plaintiff does not plead that its church internal or business
operations have been interfered with by the Defendants, or that it has been barred
from participating in a public benefit program, or that it has been asked to change

its religious teachings, or religiously-motivated conduct standards, services, or hiring practices in a way that conflicts with its religious beliefs and teaching on human sexuality – despite it regularly holding religious services that "follow the 2,000-year-old teachings of the Catholic Church," "operat[ing] an elementary school," "rent[ing] its facilities," and "participat[ing] on equal footing in public programs" since 2018 when the Commission adopted Interpretive Statement 2018-1. (ECF No. Amend. Compl., ¶¶ 1-2, 6, 10, 15-16; PageID.273, 274, 275, 278.)

Similarly, the ELCRA's public accommodations provisions, to the extent they apply to Plaintiff, allow for a respondent to show that it did not discriminate, or that it provided an alternative that constituted "full and equal" access, meaning a respondent or defendant may prevail under Michigan's civil rights laws.  See Mich. Comp. Laws § 37.2302(a).  These provisions do not appear to require "an immediate and significant change in the plaintiff's conduct" of its affairs if it is to avoid liability for noncompliance.  This is a situation involving "'the mere existence of a statute . . . which may or may not ever be applied to plaintiffs[.].'"  *National Rifle Ass'n of America*, 132 F.3d at 293 (quoting *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983).)

Further, as noted above, Plaintiff had the option of applying for a BFOQ under the ELCRA for its teaching and other religiously related staffing positions. (ECF No. 29, Amend. Compl., ¶ 102; PageID.310.)  The ELCRA allows an employer to seek an exemption "on the basis that religion . . . is a bona fide occupational

qualification reasonably necessary to the normal operation of the business or enterprise." Mich. Comp. Laws § 37.2208. It provides,

> an employer may have a bona fide occupation qualification on the basis of religion . . . without obtaining a prior exemption from the commission, provided that an employer who does not obtain an exemption shall have the burden of establishing that the qualification is reasonably necessary to the normal operation of the business."

*Id*. Yet, Plaintiff has chosen not to apply for exemption. (ECF No. 29, Amend. Compl., ¶ 82, PageID.103.) And, while Plaintiff alleges that the five-year expiration on a BFOQ exemption is "impractical and burdensome," the Commission is constitutionally and statutorily required to administer the ELCRA, *see* Mich. Const. 1963, Art. V § 29 and Mich. Comp. Laws § 37.2601(f), meaning it must ensure compliance with this state anti-discrimination law. It cannot do that if it is unable to reexamine whether a BFOQ exemption remains necessary after a reasonable period.

Michigan caselaw is instructive on how this Court should dispose of this matter. In *McLeod v. Providence Christian School*, the defendant sought to have provisions of the ELCRA struck down as unconstitutional under the First Amendment's Free Exercise Clause, as it applied to the defendant. 408 N.W.2d 146 (Mich. Ct. App. 1987). The court held that the defendant should first avail itself of the safeguards in the ELCRA—the BFOQ—before attempting to have its provisions declared unconstitutional. *Id*. at 151-52.

As in *McLeod*, redress is clearly available under the ELCRA to satisfy Plaintiff's concerns about its hiring practices. But, because Plaintiff has chosen not to do so, all that it can assert, like in *Wickliffe*, 852 F.3d at 507, is that the

Commission or Department "might have taken some action against them." *Id*.
(emphasis added).  And, as the Sixth Circuit in *Wickliffe* wrote, "[t]his is the exact
sort of hypothetical and speculative dispute that Article III proscribes from federal
court dockets." *Id*.

### 2.     Plaintiff cannot demonstrate an injury in fact that is fairly traceable to any action of Defendants.

In order to have standing to bring suit, an individual must demonstrate that
he or she "'has sustained or is immediately in danger of sustaining some direct
injury' as the result of the challenged official conduct . . . ." *Kardules v. City of
Columbus*, 95 F.3d 1335, 1347 (6th Cir. 1996) (quoting *City of Los Angeles v. Lyons*,
461 U.S. 95, 101-102 (1983).)  The injury must "affect the Plaintiff in a personal and
individual way." *Lujan*, 504 U.S. at 560 n.1.

Plaintiff's 58-page Amended Complaint includes numerous allegations
against the Defendants – all of them speculative.  Despite Plaintiff alleging that
"the Department and Commission received, investigated, processed" 73 sexual
orientation and gender identity discrimination complaints[10] "between May 2018 and
December 2019" at the time of the filing of its Amended Complaint – to date, no
action has been taken, or threatened, against Plaintiff, or any church, religious
institution or religiously affiliated school.  (ECF No. 29, Amend. Compl., ¶ 120;
PageID316-317.)  This is even though St. Joseph Catholic Church has been

---

[10] Plaintiff's Amended Complaint does not allege than any of the alleged 73
investigations involving sexual orientation or gender identity also involve a church
or religious organization or religiously affiliated school.

operating since the Interpretive Statement was issued.  (*Id*.., ¶¶ 1-2; PageID.273.)
Plaintiff has not alleged that the Commission or Department has initiated any
investigation of a religious entity such as St. Joseph on the basis of sexual
orientation or gender identity discrimination since the issuance of the 2018
Interpretative Statement, nor could it as such an investigation has not occurred.
Plaintiff, thus, has failed to allege a sufficient nexus between an injury and the
government action it attacks to justify asking this Court for judicial intervention.

As to the Attorney General, Plaintiff claims that the Attorney General's
cherry-picked statements in a press release and newspaper articles, as well as her
legal representation of the Department in *Rouch World* and her filing of an amicus
brief on behalf of the State of Michigan in *Bostock v. Clayton County* and *State of
Tennessee, et al. v. Department of Education, et al.*, somehow "chills" its First
Amendment rights and evidences that it will be subjected to investigation under
Michigan's Civil Rights Act.  (*Id*., ¶¶ 63-65; PageID.293-294.)  Such contentions
disregard the requirements for proper legal jurisprudence.  Also, such allegations do
not demonstrate that Plaintiff has been harmed or faces imminent enforcement
because of its religious beliefs based on any action taken by the Attorney General.
*See Plunderbund Media*, 312 F. Supp. 3d at 663.  For example, Plaintiff cannot
show that it is being targeted for its religious viewpoint by the Attorney General or
that the Attorney General, acting in concert with the Commission and the
Department, or vice versa, is investigating St. Joseph Catholic School, or its
employment or business practices, as a result of Interpretive Statement 2018-1 or

any Attorney General policy.  Again, the Attorney General does not have any

investigative or enforcement authority under the ELCRA.  And, contrary to the

intimation in Plaintiff's Amended Complaint, Executive Director Johnson and the

Commission do not have prosecutorial authority under state law as the ELCRA is

not a criminal statute.  (ECF No. 29, Amend. Compl., ¶¶ 23, 25; PageID.280, 281.)

Nor do selective statements made by members of the Michigan Legislature, a non-

party, or Commission members demonstrate that Plaintiff has been harmed or faces

imminent enforcement because of its religious beliefs by either the Commission or

the Department.

Moreover, neither the Commission, the Department, nor the Attorney

General have criticized or interfered with Plaintiff's internal or external

statements, advertisements, publications, and postings for employment positions

because of its religious beliefs or for any other reason.  Defendants have not

initiated a legal challenge to Plaintiff's Family – School Agreement, Code of

Conduct, Policy on the Human Body as a Constitutive Aspect of the Human Person,

Diocese of Lansing hiring guidelines, or any of Plaintiff's other authoritative

religious documents.  (*Id*., ¶¶ 37-38, 39-42; PageID.284, 285-286.)  Nor have

Defendants interfered with Plaintiff's business or employment contractual

arrangements or participation in public benefit programs.  (*Id*., ¶¶ 15-16, 86;

PageID.278, 305.)  Plaintiff is not, and has never been, prohibited from engaging in

any speech and expressive association, assembly, bids for public contracts, or any

lawful conduct by Attorney General Nessel, Commission members or Executive Director Johnson because of its religious beliefs.

Plaintiff also has never been denied the award of a public benefit program because of any action taken by the Commission in enforcing the alleged offending provisions of the ELCRA.[11]  Simply put, Defendants have taken no action against Plaintiff, *ever*.  And, Plaintiff *still* has not pled sufficient grounds to suggest otherwise or that an action on the part of any Defendant against it, a religious institution that operates a religious school, is imminent—let alone likely.  A plaintiff's "choice to chill his own speech based on his perception that he would be disciplined for speaking" does not constitute a sufficient injury in fact.  *Laird*, 408 U.S. at 13.  Since the 19th century, Plaintiff has been unobstructed by the State of Michigan to operate its church and later its Catholic school and business operations as it sees fit.

Defendants' actions or lack thereof do not demonstrate that they have "chilled" Plaintiff's speech or its expressive associations or interfered with Plaintiff's internal management or business decisions based on Plaintiff's religious beliefs, status, or mission.  As with the plaintiffs in *Laird*, Plaintiff relies only on its own subjective apprehensions, perceptions, and beliefs that it will be specially targeted for investigation and possible enforcement.  408 U.S. at 11 (holding that a chilling

---

[11] Plaintiff alleges in its Amended Complaint that "Clinton County's RESA program – by which St. Joseph obtains needed teacher and staff support at its school" has a policy prohibiting "discriminatory practices based on" sexual orientation.  (*Id*., ¶ 86; PageID.305.)  That policy is not implemented by Defendants and Clinton County is not a party.

effect cannot "arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual"); *see also Morrison*, 521 F.3d at 608–09 (holding that the plaintiff's own subjective apprehension and self-imposed unwillingness to communicate did not constitute an injury in fact). But, like the plaintiff in *Laird*, Plaintiff must demonstrate that its fears are objectively reasonable.  It cannot do so.

The decision in *Glenn v. Holder* is also instructive on this point.  690 F.3d 417, 423 (6th Cir. 2012).  There, the plaintiffs appealed the district court's determination that they did not have standing to challenge the constitutionality of the Matthew Shepard and James Byrd, Jr., Hate Crimes Prevention Act.  *Id.* at 418. The plaintiffs argued "that the expression and practice of their anti-homosexual religious beliefs [would] lead to federal investigation and prosecution under the Act, in violation of their First Amendment rights."  *Id.*  In addition to finding that the plaintiffs' "fear [of] wrongful prosecution and conviction" was "misplaced" and "inadequate to generate a case or controversy," the Court also noted that the plaintiffs' "lawsuit [was] really a political statement against the Hate Crimes Act." *Id.* at 418, 422.  The same is true here.

There is no First Amendment violation "in the absence of some actual or threatened imposition of governmental power or sanction."  *Penthouse International, Ltd. v. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991).  Given that no

investigation or enforcement action under any of the challenged provisions of the

ELCRA have been executed against Plaintiff, and there has  been no threat of such

actions, there is nothing for this Court to review to determine if Plaintiff will suffer

a harm in some still unknown circumstance in this case; thus, there is no injury in

fact traceable to any action of the Defendants.  Accordingly, Plaintiff's complaint

should be dismissed for lack of standing.

### III.    Plaintiff fails to state a Fourteenth Amendment claim.

A complaint must contain a short and plain statement of the claim showing

that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).  Detailed factual

allegations are not required, but the rule does call for sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face. *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The

plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do.  *Twombly*, 550 U.S. at 555.  The pleading must contain

something more than a statement of facts that merely creates a suspicion of a

legally cognizable right of action on the assumption that all the allegations in the

complaint are true.  *Id.*

Here, Plaintiff fails to meet even these minimal standards relative to its

Fourteenth Amendment claim.  While Plaintiff alleges five counts in the Amended

Complaint, these counts do not include any allegations supporting a Fourteenth

Amendment violation.  (ECF No. 29, Amend. Compl., PageID.318-327.)  The only

mention in the Amended Complaint of the Fourteenth Amendment occurs in paragraph 18 of the Introduction, paragraph 28 of the Jurisdiction and Venue provisions, and in the Prayer for Relief.  (*Id.*, PageID.279, 281 and 328 respectively.) None of these paragraphs contain any factual allegations or information regarding what Plaintiff proposes constitutes a Fourteenth Amendment violation.  As a result, Plaintiff's Complaint fails to state a viable claim as to the Fourteenth Amendment.

## IV.   This Court should decline to issue declaratory relief.

Plaintiff seeks declaratory relief for the alleged constitutional violations it asserts.  (ECF No. 29, Compl., ¶ 30, Prayer for Relief; PageID.281, 328.)  But a review of the factors considered in assessing whether such relief is appropriate demonstrates that Plaintiff's request should be denied.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy" a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  It is well established the authority to grant such relief "rests in the 'sound discretion' of the court" and, thus, a court may refuse to hear such a claim. *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984). Accordingly, courts are not "required to decide legal issues and give advisory relief unnecessarily."  *Id.* at 326.

Five factors should be considered in determining whether a court should render declaratory relief:

(1) whether the declaratory action would settle the controversy;

39

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and,

(5) whether there is an alternative remedy which is better or more effective.

*Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012).  At least three of these factors weigh heavily against Plaintiff's requested declaratory relief.  *Muhammad v. Paruk*, 553 F. Supp 2d 893 (E.D. Mich. 2008) (dismissing an action after weighing these factors).

First and foremost, there is no "actual controversy" under Article III warranting relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.  At this juncture, neither the Department, the Commission, nor the Attorney General have taken any adverse action against Plaintiff under the ELCRA or any other law.  Instead, as stated above, Plaintiff relies on threats of investigation that can best be characterized as "legal conclusions masquerading as factual allegations." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  This Court cannot "settle the controversy" when no controversy exists at this stage, as discussed above.

Second, declaratory relief would not serve a useful purpose in this case or "clarify[] the legal relations in issue."  Plaintiff's complaint does not allege any confusion related to the legal relationships of the parties involved in this matter,

only that it is concerned with Defendants' enforcement of Michigan's civil rights laws.  There has been a long-standing religious exemption in the ELCRA as it applies to employment, and there has been no formal policy issued by any of the Defendants regarding how any religious exemption will apply to other provisions related to sexual orientation and gender identity discrimination.  As noted above, this issue is still under consideration by the Department in the administrative complaints revived by the dismissal of *Rouch World*.

Third, given that the *Rouch World* decision was just issued in July 2022 and the Commission has yet to issue a formal policy following the decision, the better and more effective remedy to this premature lawsuit would be to wait for the Commission to address this matter in the context of the administrative complaints already pending with the Department.  Only then can Plaintiff determine whether its subjective apprehensions have ripened into actual, concrete constitutional injuries.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Defendants Michigan Attorney General Dana Nessel, John E. Johnson, the Executive Director of the Michigan Department of Civil Rights, and Michigan Civil Rights Commission members Portia L. Roberson, Zenna Faraj Elhasan, Gloria E. Lara, Regina Gasco-Bentley, Anupama Kosaraju, Richard Corriveau, David Worthams and Luke Londo, respectfully ask this Court to dismiss all claims against them under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Respectfully submitted,

*s/Tonya Celeste Jeter*
Kimberly Pendrick (P60348)
Tonya Celeste Jeter (P55352)
Assistant Attorneys General
Attorneys for Defendants
3030 West Grand Boulevard
Detroit, Michigan 48202
313.456.0200
Email: jetert@michigan.gov
P55352

Dated:  March 30, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2023 I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

A courtesy copy of the aforementioned document was placed in the mail directed to:

Judge Jane M. Beckering
685 Federal Bldg
110 Michigan St NW
Grand Rapids MI 49503

/s/ *Tonya Celeste Jeter*
Tonya Celeste Jeter
Assistant Attorney General