UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ST. JOSEPH PARISH ST. JOHNS,

     Plaintiff,

v

DANA NESSEL, in her official capacity as
Attorney General of Michigan; JOHN E.
JOHNSON, JR., in his official capacity as
Executive Director of the Michigan
Department of Civil Rights; PORTIA L.
ROBERSON, ZENNA FARAJ ELHASON,
GLORIA E. LARA, REGINA GASCOT-
BENTLEY, ANUPAMA KOSARAJU,
RICHARD CORRIVEAU, DAVID
WORTHAMS, and LUKE R. LONDO, in their
official capacities and members of the
Michigan Civil Rights Commission,

     Defendants.

No. 1:22-cv-1154

HON. JANE M. BECKERING

MAG. PHILLIP J. GREEN

**DEFENDANTS' BRIEF IN
SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S
SECOND AMENDED
COMPLAINT PURSUANT TO
FRCP 12(b)(1)**

_____ /

William J. Haun
Lori H. Windham
Nicholas R. Reaves
Attorneys for Plaintiff
The Becket Fund for Religious Liberty
1919 Penn. Ave. NW., Suite 400
Washington, DC 20006
202.955.0095
lwindham@becketlaw.org
whaun@becketlaw.org
nreaves@becketlaw.org

Tonya C. Jeter
Kimberly K. Pendrick
Attorneys for Defendants
Michigan Department of Attorney
General
3030 W. Grand Blvd., 10th Floor
Detroit, MI  48202
313.456.0067
jetert@michigan.gov
pendrickp@michigan.gov

_____ /

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FRCP
12(b)(1)**

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents.................................................................................................i

Index of Authorities..........................................................................................iii

Concise Statement of Issues Presented .....................................................vii

Introduction .......................................................................................................1

Statement of Facts............................................................................................3

Argument .............................................................................................................9

I.    Plaintiff's claims are premature and thus not ripe for pre-enforcement
review. ........................................................................................................9

    A.    In the pre-enforcement context, claims are not ripe where there
is no credible fear of enforcement because allegations of a
"chilling" effect are insufficient to sustain claims of injury..................9

        1.    There is insufficient likelihood that the alleged harm will
come to pass. .............................................................................12

        3.    The record is not sufficiently developed. ...................................18

        3.    Plaintiff has not shown sufficient hardship absent judicial
review at this time........................................................................19

II.    Plaintiff lacks standing to bring its pre-enforcement challenge where it
has not sufficiently alleged an injury in fact. ....................................22

    A.    Standing is jurisdictional and where a plaintiff cannot show an
injury in fact to support standing, the complaint must be
dismissed. ............................................................................................22

    B.    Plaintiff fails to show that it will imminently suffer an injury to
support standing to bring its pre-enforcement First Amendment
claims....................................................................................................23

        1.    Plaintiff's alleged course of conduct is not arguably
proscribed by the Elliott-Larsen Civil Rights Act.....................24

        2.    Plaintiff has not alleged a credible threat of enforcement
by Defendants under the Elliott-Larsen Civil Rights Act. ........27

III.    This Court should exercise its discretion and decline to issue declaratory relief. ........................................................................... 35

Conclusion and Relief Requested .............................................................. 38

# INDEX OF AUTHORITIES

<u>Page</u>

**Cases**

*Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563 (6th Cir. 1995) ........................ 10

*Assemany v. Archdiocese of Detroit*, 434 N.W.2d 233 (Mich. Ct. App. 1988) ............. 26

*Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154 (6th Cir. 1992) ...................... 10

*Bigelow v. Virginia*, 421 U.S. 809 (1975) ................................................................. 23

*Binno v. Am. Bar Ass'n.*, 826 F.3d 338 (6th Cir. 2016) ............................................. 23

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020) .................................................. 15

*Ciurleo v. St. Regis Parish*, 214 F. Supp. 3d 647 (E.D. Mich. 2016) ........................ 26

*Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477 (6th Cir. 2002), ........... 32

*Davis v. Colerain Twp., Ohio*, 51 F.4th 164 (6th Cir. 2022) ...................................... 32

*Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007) ................................................................................................................. 37

*Fisher v. Thomas*, 52 F.4th 303 (6th Cir. 2022) .................................................. 27, 31

*Glenn v. Holder*, 690 F.3d 417 (6th Cir. 2012) ......................................................... 34

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984) ......... 36

*Kentucky v. Yellen*, 54 F.4th 325 (6th Cir. 2022) ...................................................... 24

*Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505 (6th Cir. 2006) ........................................ 10

*Laird v. Tatum*, 408 U.S. 1 (1972) ..................................................................... 23, 33

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................. 23

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469 (2d Cir. 1999) 10, 11, 18

*McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016) .............................................. 27, 32

*McLeod v. Providence Christian Sch.*, 408 N.W.2d 146 (Mich. Ct. App. 1987) ......... 26

*Michigan Dept. of Civil Rights ex rel. Forton v. Waterford Tp. Dept. of Parks & Recreation*, 387 N.W.2d 821 (Mich. 1986) ........................................... 26

*Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533 (6th Cir. 2010) ............................................................................................................ 11

*Miller v. City of Wickliffe*, 852 F.3d 497 (6th Cir. 2017) .............................. 34

*Morrison v. Board of Educ. of Boyd County*, 521 F.3d 602 (6th Cir. 2009) .............. 33

*Muhammad v. Paruk*, 553 F. Supp 2d 893 (E.D. Mich. 2008) .................................... 36

*Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997) ................. 10, 24, 35

*Nat'l. Commodity & Barter Ass'n. v. Archer*, 31 F.3d 1521 (10th Cir. 1994) ............. 33

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002) ................................................... 10, 11

*Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990) ....................... 8

*Penthouse International, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991) ................... 35

*Peoples Rights Org. v. City of Columbus*, 152 F.3d 522 (6th Cir. 1998) ................... 24

*Plunderbund Media LLC v. DeWindek*, 312 F. Supp. 3d 654 (E.D. Mich. 2018) ...... 29

*Porth v. Roman Catholic Diocese*, 532 N.W.2d 195 (Mich. Ct. App. 1995) ............... 26

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996) ........... 8

*Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918 (6th Cir. 2002) ................... 23

*Rouch World, LLC v. Dep't. of Civil Rights*, 987 N.W.2d 501 (Mich. 2022) ....... *passim*

*Savoie v. Martin*, 673 F.3d 488 (6th Cir. 2012) .......................................................... 36

*Stoianoff v. Montana*, 695 F.2d 1214 (9th Cir. 1983) ................................................ 35

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .......................................... 24

*United States v. Hays*, 515 U.S. 737 (1995) ............................................................... 23

*United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189 (6th Cir. 1988) ............................................................................................................... 10

*Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624 (6th Cir. 2001) ............ 22

iv

*Weishuhn v. Catholic Diocese of Lansing*, 756 N.W.2d 483 (Mich. Ct. App. 2008) ................................................................................. 17, 21, 26, 31

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ................................................ 32

*Younger v. Harris*, 401 U.S. 37 (1971) ........................................................ 11

**Statutes**

Mich. Comp. Laws § 37.2101 ............................................................ *passim*

Mich. Comp. Laws § 37.2201(a) ........................................................... 25

Mich. Comp. Laws § 37.2208 ................................................... 7, 16, 18, 26

Mich. Comp. Laws § 37.2301(a) ........................................................... 25

Mich. Comp. Laws § 37.2302 ............................................................ 5, 7

Mich. Comp. Laws § 37.2302(a) ............................................................ 5

Mich. Comp. Laws § 37.2403 ..................................................... 7, 16, 19

Mich. Comp. Laws § 37.2403 ......................................................... 7, 26

Mich. Comp. Laws § 37.2601 ........................................................... 14

Mich. Comp. Laws § 37.2602 ............................................................ 4

Mich. Comp. Laws § 37.2602(b) ........................................................ 14

Mich. Comp. Laws § 37.2602(c) ........................................................ 12

Mich. Comp. Laws § 37.2705 ................................................. 6, 16, 19, 25

Mich. Comp. Laws § 37.2705(1) ........................................................... 6

Mich. Comp. Laws § 37.3302 ........................................................... 16

**Other Authorities**

28 U.S.C. § 2201 ................................................................. 35, 36

Mich. Admin. Code R. 37.6 ........................................................... 31

Mich. Admin. Code R. 37.6 ........................................................... 31

**Constitutional Provisions**

Mich. Const. 1963, Art. I, § 2.......................................................................... 3

Mich. Const. 1963, Art. IV, § 27 ...................................................................... 6

Mich. Const. 1963, Art. V, § 29 ................................................................... 3, 14

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.    The ripeness doctrine is designed to ensure that the jurisdiction of the federal courts is limited to actual cases and controversies, not premature, abstract disagreements that may not occur, and while ripeness is somewhat relaxed in the First Amendment context, there nevertheless must be a credible fear that the anticipated action will occur.  Here neither Attorney General Nessel, Executive Director Johnson, nor any of the Commission members have interfered with Plaintiff's church autonomy or business operations, let alone threatened to investigate, prosecute, or take any enforcement action against Plaintiff because of its religious beliefs, policies, or practices. Are any of Plaintiff's claims ripe for judicial resolution?

2.    To establish standing, a party must show injury in fact, not just a generalized grievance against governmental conduct, and as for a First Amendment claim, a party must show a chilling effect that is actual and imminent, not just a subjective allegation of chilled speech.  Here, Plaintiff relies on mere conjecture that someday in the future it may be investigated, prosecuted, or subjected to an enforcement action based on its religious beliefs under the amended Elliott-Larsen Civil Rights Act.  Has Plaintiff met the standing requirements to bring its First Amendment claims?

3.    The issuance of declaratory relief rests within the sound discretion of the Court, where such relief would settle the controversy, serve a useful purpose, or provide for a better or more effective remedy.  Here, declaratory relief would not settle the present controversy, and the state has an interest in the continued enforcement of its civil rights laws.  Should this Court deny Plaintiff's request for declaratory relief?

## INTRODUCTION

St. Joseph Parish St. Johns (Plaintiff or St. Joseph), filed this lawsuit in the wake of the Michigan Supreme Court's decision in *Rouch World, LLC v. Dep't of Civ. Rights*, holding that discrimination based on sexual orientation violates the State's Elliott-Larsen Civil Rights Act (ECLRA), Mich. Comp. Laws § 37.2101, *et seq*.  That decision was preceded by the Michigan Court of Claims' decision in the same case that discrimination based on gender identity likewise violates the ELCRA.

But Plaintiff's Second Amended Complaint abandons its claims under the current version of the ELCRA as interpreted in *Rouch World*, to challenge recent amendments to the act.  On March 16, 2023, Governor Whitmer signed Senate Bill 4, which amends the ELCRA to include sexual orientation and gender identity and expression as independent protected categories.  These amendments will take effect next year.  Until then, the current statutes are in effect and subject to the courts' decisions in *Rouch World*.

Plaintiff maintains that the ELCRA, as amended, contains no religious exemptions permitting it to employ only individuals who share its same religious beliefs; enforce its code of conduct, religious policies, and other religious requirements as to its worshippers, employees and students; advertise its job openings; recruit and select students who share its religious beliefs; and rent its facilities and participate in public benefit programs in accordance with its religious beliefs.  Like its two predecessors, Plaintiff's complaint can best be summarized as having one overarching claim: namely, that the ELCRA's provisions violate its First

1

Amendment rights by discouraging it from advancing its religious mission and ministry.

But none of the Defendants have threatened to enforce the ELCRA in its current or amended state against Plaintiff.  And to bring a pre-enforcement challenge, Plaintiff must first demonstrate a credible threat of enforcement.  Here, Plaintiff alleges no facts that support Defendants have or will enforce the ELCRA's prohibitions of discrimination based on sexual orientation or gender identity against religious entities in violation of their religious freedoms.

Plaintiff's claims are thus not ripe.  And for the same reasons, Plaintiff lacks standing because it has not credibly alleged an injury-in-fact to support its claims.  Plaintiff's complaint must be dismissed as a result.  This Court recently reached the same conclusion in dismissing a similar case against Defendants.  (*See* Case No. 1:22-cv-787, ECF No. 28, PageID.854-877.)

## STATEMENT OF FACTS

**Michigan authority regarding sexual orientation and gender identity discrimination under the ELCRA.**

This case was initially spurred by the *Rouch World* decisions holding that the ELCRA's "because of sex" language prohibits discrimination based upon sexual orientation and gender identity. These decisions built from an earlier interpretative statement issued by the Michigan Civil Rights Commission. But, as noted above, the ELCRA was recently amended to include sexual orientation and gender identity or expression as independent protected categories. Mich. Comp. Laws § 37.2101, *et seq.* (as amended.) To provide context, these decisions as well as the recent ELCRA amendments are briefly summarized below.

### *The Commission's Interpretive Statement*

The ELCRA has long provided protection from discrimination based upon "sex," but it did not specify whether the "because of . . . sex" language includes protection for individuals based upon sexual orientation or gender identity or expression. *See* Mich. Comp. Laws §§ 37.2102(1), 37.2103(i).

On May 21, 2018, the Commission[1] adopted Interpretive Statement 2018-1, in which it concluded that "sexual orientation" and "gender identity" fall within the meaning of "sex" as used in the ELCRA. (ECF No. 40, Sec. Amend. Compl.,

---

[1] The Commission, consisting of a bi-partisan group of eight commissioners, was established by the people in the Michigan Constitution of 1963 to carry out the guarantees against discrimination articulated in the state constitution. *See* Mich. Const. 1963, Art. V, § 29, Art. I, § 2. The Commission's duties are established by law. *See* Mich. Comp. Laws §37.2601, *et seq.*

3

PageID.676- 677, ¶ 56.) Noting analogous federal precedent, the Commission explained in its statement that:

> [T]he U.S. 6th Circuit Court of Appeals . . . ruled in the case of *EEOC v R.G. & G.R. Harris Funeral Homes, Inc.* that the same language "discrimination because of . . . sex" when used in federal civil rights law protected a transgender Michigan woman who was gender stereotyped and discriminated against for not behaving like a male. . . .

*See* Interpretative Statement 2018-1. (Ex. A.) Accordingly, the Commission found "that continuing to interpret the protections afforded by the phrase 'discrimination because of . . . sex' more restrictively by continuing to exclude individuals for reasons of their gender identity or sexual orientation would itself be discriminatory." (*Id*.)

### *Rouch World, LLC v. Dep't. of Civil Rights*

Subsequently, in the *Rouch World* cases, Michigan Courts also concluded that the "because of sex" language includes gender identity and sexual orientation. *Rouch World* was brought by Rouch World, LLC, a wedding venue that denied services for a same sex wedding (sexual orientation discrimination), and Uprooted Electrolysis, a salon, which denied hair removal services to a transgender woman (gender identity discrimination). *Rouch World, LLC v. Dep't. of Civil Rights*, 987 N.W.2d 501, 505-506 (Mich. 2022).[2] Both businesses asserted that the provision of services would violate their religious beliefs. (*Id*.)

---

[2] Unlike the instant case, Rouch World and Uprooted Electrolysis were both the subject of complaints filed with the Michigan Department of Civil Rights due to allegations of their failure to provide equal access to a public accommodation. *See* Mich. Comp. Laws § 37.2602. These administrative complaints were stayed after the lawsuit was filed.

In December 2020, following the filing of a motion for summary judgment by the Department of Civil Rights, the Michigan Court of Claims held that discrimination because of sex under the ELCRA includes discrimination because of an individual's "gender identity," and granted relief in favor of the Department with regard to Uprooted Electrolysis's claim.  (*Id.* at 506.)  However, on the basis of stare decisis, the court denied summary disposition as to the sexual orientation claim.  *Id*.  Regarding Rouch World's and Uprooted Electrolysis' First Amendment free exercise of religion claim, the Court of Claims concluded that the issue had not "been sufficiently briefed to resolve at this juncture."  *See Rouch World, LLC v. Dep't of Civ. Rights*, unpublished order of the Court of Claims, entered December 7, 2020 (Case No. 20-000145-MZ) p. 7, attached as Ex. B.  The plaintiffs did not seek to appeal the gender identity ruling.

Subsequently, the Michigan Supreme Court granted the Department of Civil Rights' (Department) bypass application challenging the Court of Claims' opinion that "because of sex" under the ELCRA did not prohibit discrimination because of an individual's sexual orientation.  *Rouch World, LLC*, 987 N.W.2d at 506.  Two years later, on July 28, 2022, the Michigan Supreme Court held that discrimination on the basis of sexual orientation is discrimination because of sex, and that the denial of "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" at a "place of public accommodation or public service" on the basis of sexual orientation is discrimination "because of . . . sex" in violation of § 302a of the ELCRA, Mich. Comp. Laws § 37.2302(a).  *Id.* at 519.  The

Michigan Supreme Court remanded the case to the Court of Claims for further proceedings consistent with its opinion.  *Id.*  On January 27, 2023, the Michigan Court of Claims dismissed the case pursuant to stipulation by the parties, leaving the Department free to process administrative complaints previously filed against Rouch World and Uprooted Electrolysis.  *See* Ex. C.

**The ELCRA is amended to include sexual orientation and gender identity or expression as protected categories.**

On March 16, 2023, Governor Gretchen Whitmer signed into law Public Act 6 of 2023, amending the ELCRA, Mich. Comp. Laws § 37.2101, *et seq*., to expressly include sexual orientation and gender identity or expression as protected categories.[3]  These amendments will take effect on the 91st day following adjournment of the Legislature, Mich. Const. 1963, Art. IV, § 27, roughly a year from now given the Legislature's history of adjourning in late December.  In the interim, the *Rouch World* decisions will continue to govern interpretation of the term "sex" as used in the ELCRA.

**The ELCRA's protection of other rights provided by law.**

The current and amended version of the ELCRA provide that the Act "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act."  Mich. Comp. Laws § 37.2705(1).  The public accommodations section prohibits discrimination in the provision of a public accommodation "[e]xcept where permitted by law."  Mich.

---

[3] Public Act 6 of 2023, can be found at, http://legislature.mi.gov/documents/2023-2024/publicact/pdf/2023-PA-0006.pdf.

Comp. Laws § 37.2302.  In the employment context, the ELCRA provides
exemptions for certain types of discrimination, including religion and sex, where
there is a "bona fide occupational qualification reasonably necessary to the normal
operation of the business[.]"  Mich. Comp. Laws § 37.2208.  And with respect to
religious educational institutions, the prohibitions related to religious
discrimination in that Article do not apply.  Mich. Comp. Laws § 37.2403.

**St. Joseph's claims**

St. Joseph Parish St. Johns is a nonprofit corporation in the Catholic Diocese
of Lansing located in St. Johns, Michigan. (ECF No. 40, Sec. Amend. Compl.,
PageID.667, 669, ¶¶22, 35.)  St. Joseph operates a church and St. Joseph Catholic
School, which enrolls about 200 children between kindergarten and sixth grade and
employs individuals as teachers and in other staffing positions.  (*Id.*, PageID.659,
670, ¶¶2, 37.)  St. Joseph also rents its facilities, namely its gymnasium and
recreational fields, and carries out parish activities and other events at the church,
such as Mass and hosting weddings and wedding receptions.  (*Id.*, PageID.665, 676,
689-690, ¶¶18-19, 54, 88- 89.)  St. Joseph alleges that events at its facilities are
open to the public.  (*Id.*)  St. Joseph additionally participates in public benefit
programs.  (*Id.*)

Plaintiff sued Attorney General Dana Nessel, John E. Johnson, the Executive
Director of the Department of Civil Rights (hereinafter referred to as the
Department), and Commission members Portia L. Roberson, Zenna Faraj Elhasan,
Gloria E. Lara, Regina Gasco-Bentley, Anupama Kosaraju, Richard Corriveau,

Luke R. Londo and David Worthams, (hereinafter referred to as the Commission) in their official capacities.  (*Id.*, ¶¶23, 25, 27, PageID.667, 668.)  Plaintiff brings five causes of action alleging that the enforcement of the accommodations, education, employment, notice and publication provisions in the amended ELCRA violate the First Amendment to the U.S. Constitution by infringing on Plaintiff's religious beliefs.  (*Id.*, PageID.662, 688, 691, 693, 694-695, 696, 702-703, 707, 709, 711, 713, 715, 716-717, ¶¶12, 85, 90, 96, 98-99, 103, 119, Prayer for Relief.)

## STANDARD OF REVIEW

This Court must dismiss a complaint if it lacks jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When reviewing a motion to dismiss under Rule 12(b)(1) that attacks the factual basis of the Court's jurisdiction, rather than the facial deficiency of the complaint, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  Further, because the Court's "very power to hear the case" is at issue, the trial court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  No presumptive truthfulness attaches to a plaintiff's allegations, and disputed material facts will not preclude a court from evaluating the merits of jurisdictional claims.  *Id*.  Under Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden of proof. *Id*.

8

## ARGUMENT

### I.   Plaintiff's claims are premature and thus not ripe for pre-enforcement review.

Plaintiff alleges that the recent amendments in the ELCRA that "'enshrine' the holdings from *Rouch World*," "threatens [its] freedom to continue its religious mission of cultivating a Catholic community . . . in both word and deed" and "threatens [it] with enforcement actions for adhering to [its] religious obligations and [its] religious exercise."  (ECF No. 40, Sec. Amend. Compl., PageID.661, 662, 691-692, 714-715, ¶¶7-8, 11, 92, 162.)  Plaintiff also alleges that the amended ELCRA threatens its religious mission in terms of its education, employment, and accommodations decisions and in how it serves and/or interacts with its employees, volunteers, parishioners, students, and the public.  (*Id.*, PageID.659, 662, 663, 664-665, ¶¶3, 12, 14, 17.)  Plaintiff further alleges that the amended ELCRA now hinders its ability to advertise, recruit and select students, hire staff, comply with the Diocese of Lansing's updated hiring guidelines, and participate "on equal footing in public programs."  (*Id.*, PageID.663-665, 699, ¶¶15, 19, 99, 112.)  But, because Plaintiff has not demonstrated a credible threat or substantial risk that it will be investigated, prosecuted, or that any enforcement action will be taken under the amended ELCRA against it, its claims are not ripe for review.

### A.   In the pre-enforcement context, claims are not ripe where there is no credible fear of enforcement because allegations of a "chilling" effect are insufficient to sustain claims of injury.

The ripeness doctrine, like the standing doctrine discussed below, originates from the Constitution's Article III requirement that the jurisdiction of the federal

courts be limited to actual cases and controversies.  *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992).  The doctrine is "designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'"  *Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505, 509 (6th Cir. 2006) (citation omitted).  Questions of ripeness arise in those cases "'anchored in future events that may not occur as anticipated, or at all.'"  *Id.* (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294 (6th Cir. 1997)).  Indeed, "a claim does not become ripe at the first whiff of governmental insensitivity or whenever a government official takes an adverse legal position against someone, even if one potential response is to curtail protected activities."  *Ky. Press Ass'n, Inc.*, 454 F.3d at 540.

> Generally, ripeness is evaluated according to three factors:
>
> (1) the "likelihood that the harm alleged by [the] plaintiffs will ever come to pass," *United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir. 1988);
>
> (2) "whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims," *Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563, 568 (6th Cir. 1995); and,
>
> (3) the "hardship to the parties if judicial relief is denied at [this] stage" in the proceedings, *Cyclops Corp.*, 860 F.2d at 195.

And "[a]lthough the ripeness requirement is somewhat relaxed in the First Amendment context, there nonetheless must be a credible fear of enforcement." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citing *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 479 (2d Cir. 1999)).

Even in the First Amendment context, a chilling effect "has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Younger v. Harris*, 401 U.S. 37, 51 (1971); *see also Marchi*, 173 F.3d at 479 (holding that anti-abortion activists' as-applied challenge to Freedom of Access to Clinic Entrances Act was not ripe for review because they did not show that the alleged "pattern of activity" would ever come to pass).  Instead, courts "look at each case to determine the consequences of staying . . . [its] hand." *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010).  In a First Amendment pre-enforcement challenge, the inquiry usually focuses on how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute. *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citing *Nat'l. Rifle Ass'n.*, 132 F.3d at 285).

Here, although Plaintiff requires its congregation, volunteers, teachers, staff, students, and parents and legal guardians of students attending its school to "support and advance" and "to uphold" Catholic teachings and policies regarding human sexuality (ECF No. 40, PageID.659, 664-665, 671-673, 675-676, ¶¶3-4, 17, 40-48, 53), expects the public renting facilities to respect the Catholic environment, and expects to not surrender its Catholic identity when participating in public benefit programs (*id.*, PageID.676, ¶54), it has not demonstrated a sufficiently imminent threat of investigation, prosecution, or any enforcement action under the amended ELCRA—*especially* considering that the amendments to the ELCRA are not in effect and will (likely) not go into effect until a year from now.  (*Id.*,

PageID.687, 689, 690-691, 692-696, 699-701, 708, 710, 712, 713, 717, ¶¶80-82, 86, 89-90, 93, 97-99, 102-103, 113-116, 137-138, 146, 153, 155.)  Plaintiff does not meet any of the factors required to demonstrate ripeness.

### 1.   There is insufficient likelihood that the alleged harm will come to pass.

There is no indication that Plaintiff will be targeted for disfavored treatment or that its speech or association will be chilled.  There is certainly no indication that any of the Defendants have interfered with—or ever contemplated interfering with—St. Joseph's religious mission, church autonomy, employment and business practices, or its internal management.  At this juncture, Plaintiff's complaint contains only abstract allegations anchored in future events that might not occur at all—or might occur differently than it anticipates.

The Department of Civil Rights is charged with receiving, initiating, conciliating, adjusting, disposing of, issuing charges, and holding hearings on complaints alleging a violation of the ELCRA.  Mich. Comp. Laws § 37.2602(c).  But, to date, no complaint has been filed against Plaintiff.  Nor does Plaintiff allege that anyone has threatened to file such a complaint. Additionally, despite the amended complaint's many paragraphs outlining the perceived burdens of the Department's investigatory process and that 73 complaints alleging sexual orientation or gender identity discrimination were investigated[4] by the Department following adoption of

---

[4] Of note, the fact that a complaint is filed is not an indication that the complaint proceeded to an investigation.  The complaint must be timely filed and it must facially set forth a claim of discrimination based on a protected category.

Interpretative Statement 2018-1 (ECF No. 40, PageID.704-705, 706, ¶¶125-128, 130-131), neither the Commission nor the Department has *sua sponte* or responsively initiated or threatened to initiate a complaint or an investigation of St. Joseph's church or school—or any other religious ministry or provider—based on the decisions in *Rouch World, LLC* holding that the ELCRA prohibits discrimination on the basis of sexual orientation and gender identity.  And more telling, neither the Commission nor the Department has *sua sponte* or responsively initiated or threatened to initiate a complaint or an investigation of St. Joseph's church or school—or any other religious ministry or provider—before the *Rouch World* decisions despite, as correctly pointed out by Plaintiff, the Commission's issuance of its interpretive statement five years ago.  (*Id.*, PageID.676-679, ¶¶56-62.)  Further still, since the passage of Public Act 6 of 2023, neither the Commission nor the Department has made any pronouncements that St. Joseph's church or school—or any other religious ministry or provider—would be the subject of *any action* because of its religious beliefs when the law goes into effect.

In fact, Plaintiff does not assert that any of those 73 complaints involved a similarly situated church or religiously affiliated school, or that any of those 73 complaints resulted in the denial of religious exemptions to a church or religiously affiliated school.  Further, while Plaintiff's complaint alleges that sex discrimination complaints more than doubled from 2018 to the present, they provide no information to this Court regarding the nature of the sex discrimination complaints, whether they are related to sexual orientation or gender identity, or

13

whether they involve religious entities.  While Plaintiff intimates that the increase must be related to sexual orientation and gender identity claims after the Commission's 2018 interpretive statement, this is pure speculation.  It also ignores that the women's "Me Too" movement was underway during this timeframe.

Likewise, Plaintiff alleges that the Attorney General has the authority to "administer, enforce, and prosecute Michigan's criminal laws, including Michigan's public accommodation laws."  (*Id*., PageID.667, ¶23.)[5]  But the ELCRA is not a criminal statute.  Further, the Attorney General does not civilly enforce the ELCRA.  Rather, the Commission enforces the ELCRA.  Mich. Const. 1963, Art. V, § 29; Mich. Comp. Laws § 37.2601.  In addition to lacking jurisdiction to "administer, enforce, and prosecute" the ELCRA, the Attorney General has not threatened any action against St. Joseph or any other entity—religious or otherwise—under that law.  Similarly, as the legal representative of the Department and Commission in civil actions, *see* Mich. Comp. Laws § 37.2602(b), the Attorney General has taken no actions against Plaintiff, *ever*.  Nor has the Attorney General made *any* public pronouncements either before or after the ELCRA's amendment, about how including sexual orientation and gender identity as protected categories under the ELCRA would interface with religious rights or whether the ELCRA was amenable to religious exemptions.

---

[5] Plaintiff cites to Mich. Comp. Laws §§761.1(r) and 767.40, but neither pertain to civil rights or public accommodations.  (ECF No. 40, PageID.667, ¶23.)

Her support for a multi-state amicus filed in *Bostock v. Clayton County*, expressed the position that discrimination "because of sex" likewise prohibits discrimination based on sexual orientation and gender identity (a position that was ultimately embraced by the U.S. Supreme Court), but did not discuss the issue of religious exemptions.  (ECF No. 40, PageID.680-681, ¶ 66.)  In the same way, her support for a multi-state amicus filed in *State of Tennessee, et al. v. Department of Education, et al.*, No. 22-5807 (6th Cir.), concerned federal guidance issued by the Department of Education and the Equal Employment Opportunity Commission construing Title VII and Title IX to protect LGBTQ students and workers from discrimination based on the Supreme Court's holding in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).  But, as in the case with the multi-state amicus filed in *Bostock*, it too did not discuss the issue of religious exemptions.  (ECF No. 40, PageID.681, ¶67.)

Further, Plaintiff's selective statements of Attorney General Nessel in press releases or in news articles following the *Rouch World* decision or the recent ELCRA amendments never expressed a position, one way or the other, regarding religious exemptions.  Nor does St. Joseph's cherry-picking of her statements to attribute an anti-religion viewpoint to her constitute a policy of targeting religious entities such as St. Joseph for some type of enforcement action.  (*Id.*, PageID.661, 681-682, 683-684, 686-687, ¶¶8, 69, 72, 78.)  Contrary to Plaintiff's claims, the Attorney General has never indicated that the ELCRA's inclusion of sexual orientation and gender identity as protected categories would prohibit religious

schools or churches from operating consistently with their religious teaching on human sexuality.  In addition, the Attorney General's statements that Michigan's civil rights laws may not be used to discriminate against citizens based on sexual orientation and gender identity—without any reference to religious freedoms—does not single-out or target St. Joseph, nor are they improper.  Her statements, taken as a whole, do not demonstrate that St. Joseph has been harmed or faces an actual imminent threat based on any actual action taken by the Attorney General. Especially where she has no investigative or enforcement authority under the ELCRA.  And especially when the amended ELCRA is not yet in effect and has yet to be interpreted.

By the same token, Plaintiff's cherry-picked statements from the Commission commenting on the *Rouch World* decision where the Michigan Supreme Court agreed with its interpretation of the ELCRA, or its resolution supporting the codification of that decision into law, does not demonstrate that St. Joseph has been harmed or faces an imminent threat based on any actual action taken by the Commission or the Department.  (*Id.*, PageID.684-685, ¶¶73-74, 76.)  More importantly, those statements do not express any actual executed departmental policy restricting or denying religious exemptions under the ELCRA, as directed by the Commission, to St. Joseph or any other church or religious organization. Indeed, both the Commission and the Department have operated with the understanding that the ELCRA already provides for exemptions on the basis of religion.  *See* Mich. Comp. Laws §§ 37.2208, 37.3302, 37.2403, 37.2705.

Nor does Plaintiff's citation of selective statements from Twitter or in a news article by a few state Senators on legislation that was not enacted establish that St. Joseph or any religious organization has been harmed or faces an imminent threat by the named Defendants—especially given that the current and amended ELCRA protect religious exercise and the ELCRA's mandate that it be interpreted in accordance with other applicable laws.  (ECF No. 40, PageID.686, ¶77.)  This Court recently recognized as much in the related case *Christian Healthcare Centers v. Nessel, et. al.*, noting that "the ELCRA [does not] facially fail[] to recognize religious freedoms like those asserted by [the plaintiff][.]"  (Case No. 1:22-cv-787, ECF No. 28, PageID.871.)

And, despite Plaintiff's insinuation that the Department's recent amendments to its administrative rules were enacted with an anti-religious motive, Plaintiff cannot demonstrate that those rules were amended for the specific purpose of targeting St. Joseph or *any* religious organization.  (*Id.*, PageID.684-685, ¶¶74, 75.)  In fact, regarding the rules that Plaintiff takes issue with, Plaintiff cannot demonstrate that it is (or has ever been) the subject of a civil rights complaint, or that it has been denied a BFOQ where reasonably necessary to its normal operation as a church and school (Mich. Comp. Laws §37.2208), or that it has requested or ever been denied a religious exception.  *Weishuhn*, 756 N.W.2d at 486.  Indeed, this Court recently concluded that Michigan's caselaw establishes that "the ELCRA has been construed in conjunction with constitutional and statutory religious exemptions."  (Case No. 1:22-cv-787; ECF No. 28, PageID.870-871.)

17

Plaintiff fails to provide any facts demonstrating that the Commission or the Department has ever *sua sponte* or responsively initiated or threatened to initiate a complaint or an investigation of St. Joseph's church or school—or any other religious ministry or provider—on the basis of its religious beliefs following an exemption request.  Nor has Plaintiff shown that such action is likely or imminent.

Because Plaintiff's complaint remains a panoply of assumptions and conjecture, Plaintiff cannot demonstrate that it has been harmed or that any alleged harm to it by the Commission and Department Defendants or the Attorney General is imminent.

### 3.  The record is not sufficiently developed.

There are insufficient facts to allow for adjudication.  *See Marchi*, 173 F.3d at 478 (finding claim unripe when it "would be forced to guess at how [the defendant] might apply the . . . directive).  In the employment context, St. Joseph's request for relief forces this Court to speculate on whether St. Joseph would be granted an exemption if it sought one—which it has thus far not done.  *See* Mich. Comp. Laws § 37.2208.  Similarly, in the educational context, St. Joseph's request for relief forces this Court to speculate as to whether St. Joseph would be granted an exemption to "recruit and select students based on agreement with Catholic religious beliefs" given that the ELCRA unambiguously exempts a religious education institution, "which limits admission or gives preference to an applicant of the same religion" from the prohibited practices requirements, or whether the

18

Commission and Department would take any action based upon its teachings.  (*Id.*, PageID.699, ¶112.)  *See* Mich. Comp. Laws § 37.2403.

In addition, in both the educational and accommodations context, St. Joseph asks this Court to speculate on whether any of its students, worshippers or members of the public would request or seek to use its services or facilities in a manner in contravention to its religious beliefs or whether St. Joseph would be denied participation in a public program[6] because of its religious beliefs.  And it forces this Court to speculate as to how the Commission, if it did launch an investigation based on complaints or reports of discrimination based on sexual orientation or gender identity, would choose to address religious rights in relation to the ELCRA based on the Act's specific caution that it "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act."  Mich. Comp. Laws § 37.2705(1).  Again, the Commission has not put out an interpretive statement or otherwise opined on these issues.  Neither has Attorney General Nessel.

### 3. Plaintiff has not shown sufficient hardship absent judicial review at this time.

At this time, there is no evidence that St. Joseph will suffer a hardship if judicial review is denied.  Given that the amendments to the ELCRA are not in effect, and no action has been taken against it, no investigation launched or

---

[6] While Plaintiff's Second Amended Complaint contains allegations regarding funding and public programs, none of the Defendants named in this complaint have authority or oversight over the public programs or funding referenced in the complaint, nor is it administered under the ELCRA.

threatened, no complaint filed against it with the Department, and there is no indication that the Attorney General is poised to pursue any action, Plaintiff's alleged hardships are too speculative to support judicial review.

Contrary to allegations in Plaintiff's complaint, Michigan law—foremost the recent amendments to ELCRA—has not been definitively interpreted to prohibit the kinds of activities St. Joseph alleges to be at risk.  In the education arena, for example, St. Joseph cites no Michigan cases interpreting Michigan law as prohibiting a religious educational institution from inquiring about prospective and current students religious beliefs; recruiting and selecting students that share its religious beliefs, or, in the alternative, declining those who do not; enforcing its policies and religiously-motivated conduct standards; requiring parents and/or legal guardians of students to uphold the religious mission; or, advertising and/or publishing materials about its religious-based expectations.  (ECF No. 40, PageID.696-697, 702-703, ¶¶106, 119.)

In the employment arena, St. Joseph cites no Michigan cases interpreting the ELCRA as prohibiting a religious employer who qualifies for an exemption from asking prospective employees about whether they can abide by certain beliefs; seeking, recruiting, and hiring employees who agree with certain religious beliefs; requiring hires comply with certain religious beliefs; or posting employment opportunities that indicate a desire to hire employees who share certain beliefs. (*Id.*, PageID.694-695, 696, ¶¶99, 103.)  Indeed, Michigan courts have recognized that religious employers are protected by the "ministerial exception" in the

application of the ELCRA.  *See, e.g., Weishuhn v. Catholic Diocese of Lansing*, 756 N.W.2d 483, 486 (Mich. Ct. App. 2008) ("The ministerial exception is a nonstatutory, constitutionally compelled exception to the application of employment-discrimination and civil rights statutes to religious institutions and their 'ministerial' employees.")

And, in the accommodations arena, St. Joseph cites to no Michigan cases interpreting the ELCRA as prohibiting it from requiring that its facilities be used in accordance with its religious beliefs; requiring it to make statements contrary to its religious teachings; or disallowing it from publishing its religious teachings.  (*Id.*, PageID.689-690, 691-693, ¶¶88, 92, 93.)  Further, the ELCRA's public accommodations provisions, to the extent they apply to Plaintiff, allow for a respondent to show that it did not discriminate, or that its actions are "permitted by law," or that it provided an alternative that constituted "full and equal" access, meaning a respondent or defendant may prevail under Michigan's civil rights laws. *See* Mich. Comp. Laws §37.2302(a).

The absence of state precedent addressing religious exemptions under the ELCRA post-*Rouch World* further lessens the possibility of an impending investigation or enforcement action and underscores that this lawsuit is premature. St. Joseph can continue to advance its religious mission "of cultivating a Catholic community to Church teaching in both word and deed" through its education, employment, and public accommodations practices, if any, without losing its opportunity to file a future lawsuit if specific action is taken against it.  In the

meantime, it can await a future case where the Michigan courts grapple with the question the Michigan Supreme Court left unanswered in *Rouch World*.  And if Plaintiff is unsure of how the Commission will apply the Michigan Supreme Court's interpretation in *Rouch World* or the new amendments, it can request a declaratory ruling.  Mich. Admin. Code, R 37.20.

## II.     Plaintiff lacks standing to bring its pre-enforcement challenge where it has not sufficiently alleged an injury in fact.

St. Joseph alleges that the ELCRA, as amended, violates its First Amendment rights, both facially and as applied, by chilling or compelling its speech, by violating its religious autonomy, and by violating its freedom of expressive association, assembly, free exercise of religion, and the Establishment Clause. (ECF No. 40, PageID.708, 710, 713, 715, ¶¶137-138, 146, 157, 165.)  Plaintiff further alleges violations under the First Amendment based on its status as a religious organization or its use of public funds.  (*Id.*, PageID.712, ¶153.)  It alleges these violations could result in harm to be incurred in the future and seeks declaratory and permanent injunctive relief.  (*Id.*, PageID.716-17.)

### A.     Standing is jurisdictional and where a plaintiff cannot show an injury in fact to support standing, the complaint must be dismissed.

This Court has an independent duty to make sure that Plaintiff has standing to bring its action before addressing the merits of the case.  *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001) ("Standing is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to deprive a

court of jurisdiction.") (citations omitted).  "If a party does not have standing to bring an action, then this Court has no authority to hear the matter and must dismiss the case."  *Binno v. Am. Bar Ass'n.*, 826 F.3d 338, 344 (6th Cir. 2016) (internal citation omitted).  "The burden of establishing standing is on the party seeking federal court action."  *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To demonstrate Article III standing, a plaintiff must establish an injury that is (1) actual or imminent and concrete and particularized, not hypothetical or conjectural, (2) traceable to the defendant, and (3) likely to be redressed by a favorable decision.  *Lujan*, 504 U.S. at 560–61.

**B.    Plaintiff fails to show that it will imminently suffer an injury to support standing to bring its pre-enforcement First Amendment claims.**

It is well-established that "[a] generalized grievance against governmental conduct is insufficient to confer standing upon a party."  *Id.* (citing *United States v. Hays*, 515 U.S. 737, 743 (1995)).  For this reason, plaintiffs bringing First Amendment claims "must present more than 'allegations of a subjective chill.'"  *Bigelow v. Virginia*, 421 U.S. 809, 816–17 (1975) (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)).  "Allegations of a subjective 'chill' are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm[.]"  *Laird*, 408 U.S. at 13–14.

Here, Plaintiff seeks pre-enforcement relief.  (ECF No. 40, ¶33, PageID.668.) A declaratory judgment action brought prior to the completion of an injury in fact is proper if the plaintiff can "demonstrate actual present harm or a significant possibility of future harm[.]"  *Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998) (citing *National Rifle Ass'n.*, 132 F.3d at 279).  In other words, an individual need not "await the consummation of threatened injury to obtain preventive relief."  *Id.* at 527.

The standing question comes down to whether Plaintiff can show a credible threat of investigation or charge.  To do so, Plaintiff must plausibly allege; (1) an intent to engage in a course of conduct arguably affected with a constitutional interest, (2) that this course of conduct is arguably proscribed by the challenged statutes, and (3) that if Plaintiffs pursue the alleged course of conduct, there is a credible threat that Defendants will pursue enforcement under the challenged statues. *Kentucky v. Yellen*, 54 F.4th 325, 336 (6th Cir. 2022) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014)).

Plaintiff arguably satisfies the first factor—intent to engage in protected conduct—but Plaintiff fails to allege sufficient facts satisfying the second and third factors.

### 1.    Plaintiff's alleged course of conduct is not arguably proscribed by the Elliott-Larsen Civil Rights Act.

For many of reasons already stated above, the ELCRA does not proscribe activity otherwise protected by the First Amendment.  St. Joseph alleges that the ELCRA's education, employment, notice, accommodation, and publication

provisions "chill" it from exercising its constitutional rights.  (ECF No. 40, PageID.663-664, 665-666, 698-699, 710, 713, 714-15, ¶¶15-16, 20, 106, 146-147, 155, 162.)  Plaintiff asserts that those provisions (1) deter it from engaging in religious exercise in violation of the First Amendment, and (2) deter its right to church autonomy, freedom of speech, expressive association, and assembly in violation of the First Amendment.  (*Id.*, PageID.709-716, ¶¶141-170.)

Plaintiff, as a church and private school, may be subject to the ELCRA as an employer, Mich. Comp. Laws §37.2201(a), and as an educational institution, Mich. Comp. Laws §37.2401.  To what extent Plaintiff may also be subject to the ELCRA as a "place of public accommodation" will depend on whether the services or facilities to which a person will be denied the full and equal enjoyment of are extended by Plaintiff "to the public."  Mich. Comp. Laws §37.2301(a).  *See, e.g.*, *Varlesi v. Wayne State Univ.*, 909 F. Supp. 2d 827, 845–48 (E.D. Mich. 2012) (Adult rehabilitation center operated by religious organization was not a "place of public accommodation" within meaning of the ELCRA).

But to the extent these statutes apply to Plaintiff, they do not facially proscribe Plaintiff from exercising any constitutionally protected religious rights, as this Court has recognized.  (Case No. 22-cv-787, ECF No. 28, PageID.871.)

The ELCRA generally provides that it "shall not be construed as preventing . . . securing civil rights guaranteed by law other than the civil rights set forth in this act."  Mich. Const. Laws §37.2705(1).  More specifically, the ELCRA prohibits discrimination by a place of public accommodation "[e]xcept where permitted *by*

*law*," which includes constitutional law.  Mich. Comp. Laws §37.2302 (emphasis added); *Michigan Dept. of Civil Rights ex rel. Forton v. Waterford Tp. Dept. of Parks & Recreation*, 387 N.W.2d 821 (Mich. 1986).  Further, in the employment context, discrimination based on a protected category is permissible where it is a "bona fide occupational qualification reasonably necessary to the normal operation of the business[.]"  Mich. Comp. Laws §37.2208.  And the state courts have recognized and applied the "ministerial exception" to religious employers in ELCRA cases.  *See, e.g.*, *Weishuhn*, 756 N.W.2d 483; *Porth v. Roman Catholic Diocese*, 532 N.W.2d 195 (Mich. Ct. App. 1995); *McLeod v. Providence Christian Sch.*, 408 N.W.2d 146 (Mich. Ct. App. 1987); *Assemany v. Archdiocese of Detroit*, 434 N.W.2d 233 (Mich. Ct. App. 1988).[7]  *See also, Ciurleo v. St. Regis Parish*, 214 F. Supp. 3d 647 (E.D. Mich. 2016).  As aptly pointed out by this Court, the ministerial exception "has its 'roots in the First Amendment's guarantees of religious freedom.'"  (Case No. 1:22-cv-787, ECF No. 28; PageID.870.)  Similarly, religious educational institutions like Plaintiff are not prohibited from making admission decisions based on religion.  Mich. Comp. Laws §37.2403.

Plaintiff conflates it being facially subject to the statutes, for example as an "employer" under the ELCRA, with the actual proscription of its protected activities.  Further, the breadth of activities Plaintiff alleges are now prescribed by the ELCRA is dubious and speculative where there is little to no precedent applying

---

[7] Of note, those cases were brought by private individuals not the Department or Commission Defendants.

these statutes to religious institutions.  And given that the statutes provide they are
to be construed with other laws, and that the current version of the ELCRA has
been interpreted accordingly, Plaintiff fails to sufficiently allege that the ELCRA, as
amended, arguably proscribes Plaintiff's alleged protected conduct.

### 2.  Plaintiff has not alleged a credible threat of enforcement by Defendants under the Elliott-Larsen Civil Rights Act.

Plaintiff likewise cannot show a credible threat of enforcement.  This Court
reached the same conclusion in the related case *Christian Healthcare Centers v.
Nessel et al.*, where the plaintiff alleged similar threats of enforcement regarding
the ELCRA.  (Case No. 22-cv-787, ECF No. 28, PageID.872-76.)  Here, as there,
Plaintiff's allegations of a credible threat are wholly speculative, and it presumes,
without evidence, that Defendants will not appropriately consider religious
exemptions provided by other laws.

A credible threat of prosecution may exist where a plaintiff alleges a
subjective chill on protected speech *and* points to some combination of the four
factors discussed in *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016).  *See
Fisher v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022).  Assuming *arguendo* Plaintiff
plausibly alleges a subjective chill, the *McKay* factors do not weigh in its favor.

*First*, Plaintiff has not shown a history of past enforcement of the ELCRA
against it or other similar religious institutions.  And *second*, Plaintiff has not
shown that Defendants have sent warning letters to St. Joseph or other similar
religious institutions threatening enforcement under any article of the ELCRA.  As
of the filing of its amended complaint, Plaintiff cannot even show a threatened,

much less an actual or sufficiently imminent, investigation or enforcement action against it by the Commission or Department under the ELCRA in its current or amended version.  And Plaintiff simply fails to allege any threatened action by the Attorney General who, again, has no investigative or enforcement authority under the amended ELCRA.  Instead, Plaintiff's 61-page complaint includes only speculative allegations against the Defendants.

Despite Plaintiff alleging that "the Department and Commission received, investigated, processed" 73 sexual orientation and gender identity discrimination complaints[8] "between May 2018 and December 2019" and the filing of its amended complaint—to date, no action has been taken, or threatened, against Plaintiff, or any church or religiously affiliated school.  (ECF No. 40, PageID.705-706, ¶128.) This is even though Plaintiff has been operating since the Commission's Interpretive Statement was issued in 2018.  (*Id*., PageID.659, ¶¶1-2.)  Plaintiff has not alleged that the Commission or Department has initiated any investigation of a religious entity such as St. Joseph on the basis of sexual orientation or gender identity discrimination, nor could it as such an investigation has not occurred.

As to the Attorney General, Plaintiff claims that the Attorney General's cherry-picked statements in a press release and news articles, as well as her legal representation of the Department in *Rouch World* and her filing of amicus briefs on behalf of the State of Michigan somehow "chills" its First Amendment rights and

---

[8] Plaintiff's complaint does not allege than any of the alleged 73 investigations involving sexual orientation or gender identity also involve a church or religious organization or religiously affiliated school.

evidences that it will be subjected to investigation under the ELCRA.  (*Id.*,
PageID.680-681, ¶¶66-67.)  But such allegations do not demonstrate that Plaintiff
has been harmed or faces imminent enforcement because of its religious beliefs
based on any action taken by the Attorney General.  *See, Plunderbund Media LLC
v. DeWindek*, 312 F. Supp. 3d 654, 663 (E.D. Mich., 2018).

For example, Plaintiff cannot show that it is being targeted for its religious
viewpoint by the Attorney General or that the Attorney General, acting in concert
with the Commission and the Department, or vice versa, is investigating St. Joseph
Catholic School, or its employment or business practices, as a result of the
Commission's interpretive statement or any Attorney General policy.  Again, the
Attorney General does not have any investigative or enforcement authority under
the ELCRA.  And, contrary to Plaintiff's intimation, the Department and
Commission Defendants do not have prosecutorial authority under state law as the
ELCRA is not a criminal statute.  (*Id.*, PageID.667, 668, ¶¶26, 28.)  Nor do selective
statements made by non-party members of the Michigan Legislature or a non-party
commissioner demonstrate that Plaintiff has been harmed or faces imminent
enforcement because of its religious beliefs by either the Commission or the
Department.

Moreover, neither the Commission, the Department, nor the Attorney
General have criticized or interfered with Plaintiff's internal or external
statements, advertisements, publications, and postings for employment positions
because of its religious beliefs or for any other reason.  Defendants have not

initiated a legal challenge to Plaintiff's Family – School Agreement, Code of Conduct, Policy on the Human Body as a Constitutive Aspect of the Human Person, Diocese of Lansing hiring guidelines, or any of Plaintiff's other authoritative religious documents pointing to the amended ELCRA as authority to do so.  (*Id.*, PageID.671-673, ¶¶40-41, 42-45.)  Nor have Defendants interfered with Plaintiff's business or employment contractual arrangements or participation in public benefit programs asserting the amended ELCRA as authority to do so.  (*Id.*, PageID.665, 693, ¶¶ 18-19, 94.)  Plaintiff is not, and has never been, prohibited from engaging in any speech and expressive association, assembly, bids for public contracts, or any lawful conduct by the Commission or Department Defendants or the Attorney General because of its religious beliefs.

Plaintiff also has never been denied the award of a public benefit program because of any action taken by the Commission in enforcing the alleged offending provisions of the ELCRA either in its current or future version.[9]  Simply put, Defendants have taken no action against Plaintiff, *ever*.  And, Plaintiff *still* has not pleaded sufficient grounds to suggest otherwise or that an action on the part of any Defendant against it, a religious institution that operates a religious school, is imminent—let alone likely.

---

[9] Plaintiff alleges in its Second Amended Complaint that "Clinton County's RESA program – by which St. Joseph obtains needed teacher and staff support at its school" has a policy prohibiting "discriminatory practices based on" sexual orientation.  (*Id.*, PageID.693, ¶94.)  That policy is not implemented by Defendants and Clinton County is not a party.

*Third,* the ELCRA does not, necessarily, make *enforcement* easier or more likely against Plaintiff or other religious institutions.  *Fischer*, 52 F.4th at 307. Plaintiff notes that "[a]ny person claiming to be aggrieved by unlawful discrimination" may file a complaint with the Department.  (ECF No. 40, PageID.703, ¶ 122).  If a complaint is timely and facially alleges discrimination based on a protected category, the Department will undertake an investigation. Mich. Comp. Laws §37.2602(c).  But the scope of an investigation, any determination that actionable discrimination occurred, and any determination to issue a charge, *see* Mich. Admin. Code R. 37.6, will be shaped by the facts and applicable laws, including constitutional law which, again, the ELCRA incorporates. *See*, Mich. Comp. Laws §§ 37.2208, 37.2302(a), 37.2705.  *See also, Weishuhn*, 756 N.W.2d 483.  Indeed, this Court rejected ease of enforcement of the ELCRA to support a credible threat of enforcement for purposes of standing, concluding "this . . . is not compelling where the ELCRA also provides that such a suit may not be premised on discrimination that is 'permitted by law.'" (Case No. 1:22-cv-787, ECF No. 28, PageID.875.)  And again, Plaintiff has never been requested to respond to any civil rights complaint naming it as a respondent in any of its capacities. Further, even if a complaint is someday filed with the Department under the amended ELCRA, that does not guarantee the Department will authorize the complaint, let alone conduct a full-blown investigation.  *See* Mich. Admin. Code, Rule 37.6.  On these facts, this factor simply does not weigh in Plaintiff's favor

where the ELCRA expressly, and as interpreted, incorporates religious protections provided by other laws.

Finally, *fourth*, relative to disavowal, this case involves to what extent Defendants would enforce a future ELCRA claim against Plaintiff where the statutes specifically provide for consideration of other applicable laws.  But there is no actual set of facts.  No complaint has been filed against Plaintiff.  It is impossible for Defendants to disavow application of a statute as broad as the ELCRA to St. Joseph where the religious freedom inquiry would be so fact dependent.  *See, e.g., Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 174 (6th Cir. 2022) (determining that the fact that the police department had not "disavowed enforcement" of its Facebook Rule "does nothing to show that [the plaintiff] plans to engage in speech that might arguably fall within the rule").  Here, the ELCRA does not deny religious freedoms, rather those freedoms must be weighed on a case-by-case basis. Disavowal is not applicable in this context.

Plaintiff fails to show any of the *McKay* factors weigh in its favor, and thus fails to demonstrate a credible threat of enforcement under the ELCRA.

Caselaw supports this conclusion, demonstrating that where a subjective allegation of chill is alleged, "something more" is needed, such as the issuance of a temporary restraining order, *Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 482-83 (6th Cir. 2002), an eight-month investigation into the activities and beliefs of the plaintiffs by government officials, *White v. Lee*, 227 F.3d 1214, 1226, 1228 (9th Cir. 2000), or "numerous alleged seizures of membership lists and other

property" belonging to plaintiffs, *Nat'l. Commodity & Barter Ass'n. v. Archer*, 31 F.3d 1521, 1530 (10th Cir. 1994).

In *Laird v. Tatum*, the Supreme Court observed that a plaintiff's "choice to chill his own speech based on his perception that he would be disciplined for speaking" does not constitute a sufficient injury in fact. *Laird*, 408 U.S. at 13. The Court found that a plaintiff's knowledge of government surveillance and the fear that the government might take some future action using that information, by itself, does not create an actual or imminent injury-in-fact for standing purposes. 408 U.S. at 13-14. The Court concluded that the harm alleged resulted from the plaintiffs' confluence of subjective perceptions, beliefs, and apprehensions that the government might, at some future date, misuse the information gained in a way that would cause direct harm. *Id*. at 13. Without more, such as an "exercise of governmental power [that] [is] regulatory, proscriptive, or compulsory in nature," this was insufficient to establish standing. *Id*. at 13–14.

In *Morrison v. Board of Educ. of Boyd County*, the Sixth Circuit held that subjective chill alone is insufficient to establish standing. 521 F.3d 602, 608 (6th Cir. 2009.) Morrison was a high school student and Christian who believed that his religion required him to tell gay students that their sexual orientation was a sin. *Id*. at 605. His high school had a written policy prohibiting students from making potentially harassing and derogatory statements to students based on sexual orientation. Morrison alleged that the written policy chilled his speech because he feared being punished. *Id*. After the filing of the lawsuit, the school board modified

its policy to permit anti-gay speech unless it was "sufficiently severe or pervasive that it adversely affects a student's education or creates a climate of hostility or intimidation for that student, both from the perspective of an objective educator and from the perspective of the student at whom the harassment is directed." *Id*. at 607.  The Court held that Morrison did not have standing.  *Id*. at 608.  The Court reasoned that "the record [was] silent as to whether the school district threatened to punish or would have punished Morrison for protected speech in violation of its policy." *Id*.  The Court declined to find standing where Morrison's claim was based solely on apprehension without any specific action by the school board that supported that punishment would result.  *See also*, *Miller v. City of Wickliffe*, 852 F.3d 497, 505–07 (6th Cir. 2017).

Similarly, in *Glenn v. Holder*, the plaintiffs appealed the district court's determination that they did not have standing to challenge the constitutionality of the Matthew Shepard and James Byrd, Jr., Hate Crimes Prevention Act.  690 F.3d 417, 418 (6th Cir. 2012).  The plaintiffs argued "that the expression and practice of their anti-homosexual religious beliefs [would] lead to federal investigation and prosecution under the Act, in violation of their First Amendment rights." *Id*.  In addition to finding that the plaintiffs' "fear [of] wrongful prosecution and conviction" was "misplaced" and "inadequate to generate a case or controversy," the Court also noted that the plaintiffs' "lawsuit [was] really a political statement against the Hate Crimes Act." *Id*. at 418, 422.  The same is true here.

34

There is no First Amendment violation "in the absence of some actual or threatened imposition of governmental power or sanction." *Penthouse International, Ltd. v. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991).  Given that no investigation or enforcement action under any of the challenged provisions of the amended ELCRA has been executed or threatened against Plaintiff by any Defendant, there is nothing for this Court to review to determine if Plaintiff will suffer a harm in some still unknown circumstance in this case; thus, there is no injury in fact traceable to any action of the Defendants.  This is plainly a situation involving " 'the mere existence of a statute . . . which may or may not ever be applied to plaintiffs[.]'" *National Rifle Ass'n. of America*, 132 F.3d at 293 (quoting *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983)).  Plaintiff's complaint should be dismissed for lack of standing.

### III.   This Court should exercise its discretion and decline to issue declaratory relief.

Plaintiff seeks declaratory relief for the alleged constitutional violations it asserts.  (ECF No. 40, Sec. Amend. Compl., PageID.668, 716-717, ¶33.)  But a review of the factors considered in assessing whether such relief is appropriate demonstrates that Plaintiff's request should be denied.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy" a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  It is well established the authority to grant such relief "rests in the

'sound discretion' of the court" and, thus, a court may refuse to hear such a claim. *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984). Accordingly, courts are not "required to decide legal issues and give advisory relief unnecessarily." *Id.* at 326.

Five factors should be considered in determining whether a court should render declaratory relief:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and,
>
> (5) whether there is an alternative remedy which is better or more effective.

*Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012).  At least three of these factors weigh heavily against Plaintiff's requested declaratory relief.  *Muhammad v. Paruk*, 553 F. Supp 2d 893 (E.D. Mich. 2008) (dismissing an action after weighing these factors).

First and foremost, there is no "actual controversy" under Article III warranting relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.  At this juncture, the ELCRA amendments that Plaintiff complains of are not in effect.  In addition, neither the Department, the Commission, nor the Attorney General have taken any adverse action against Plaintiff under the ELCRA or any other law.

Instead, as stated above, Plaintiff relies on threats of investigation under amendments to the ELCRA not in effect that can best be characterized as "legal conclusions masquerading as factual allegations." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  This Court cannot "settle the controversy" when no controversy exists at this stage, as discussed above.

Second, declaratory relief would not serve a useful purpose in this case or "clarify[] the legal relations in issue."  Plaintiff's complaint does not allege any confusion related to the legal relationships of the parties involved in this matter, only that it is concerned with Defendants' enforcement of Michigan's civil rights laws.  There has been no formal policy issued by any of the Defendants regarding how any religious exemption will apply to amended provisions related to sexual orientation and gender identity discrimination.  As noted above, this issue is still under consideration by the Department in the administrative complaints revived by the dismissal of *Rouch World*.

Third, given that the ELCRA was just amended in March 2023 and the Commission has yet to issue a formal policy or interpretive statement following those amendments, the better and more effective remedy to this premature lawsuit would be to wait for the Commission to address this matter in the context of the administrative complaints already pending with the Department.  Only then can Plaintiff determine whether its subjective apprehensions have ripened into actual, concrete constitutional injuries.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Defendants respectfully ask this Court to

dismiss Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(1).

Respectfully submitted,

*s/Tonya Celeste Jeter*
Kimberly Pendrick (P60348)
Tonya Celeste Jeter (P55352)
Assistant Attorneys General
Attorneys for Defendants
3030 West Grand Boulevard
Detroit, Michigan 48202
313.456.0200
Email: jetert@michigan.gov
P55352

Dated:  May 5, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2023 I electronically filed the above
document(s) with the Clerk of the Court using the ECF System, which will provide
electronic copies to counsel of record.

A courtesy copy of the aforementioned document was placed in the mail
directed to:

Judge Jane M. Beckering
685 Federal Bldg
110 Michigan St NW
Grand Rapids MI 49503

*s/Tonya Celeste Jeter*
Tonya Celeste Jeter
Assistant Attorney General