UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ST. JOSEPH PARISH ST. JOHNS,

      Plaintiff,

v

DANA NESSEL, in her official capacity as
Attorney General of Michigan; JOHN E.
JOHNSON, JR., in his official capacity as
Executive Director of the Michigan
Department of Civil Rights; PORTIA L.
ROBERSON, ZENNA FARAJ ELHASON,
GLORIA E. LARA, REGINA GASCOT-
BENTLEY, ANUPAMA KOSARAJU,
RICHARD CORRIVEAU, DAVID
WORTHAMS, and LUKE R. LONDO, in their
official capacities as members of the Michigan
Civil Rights Commission,

      Defendants.

No. 1:22-cv-1154

HON. JANE M. BECKERING

MAG. PHILLIP J. GREEN

**REPLY BRIEF IN SUPPORT
OF MOTION TO DISMISS**

_____/

William J. Haun
Lori H. Windham
Nicholas R. Reaves
Attorneys for Plaintiff
The Becket Fund for Religious Liberty
1919 Penn. Ave. NW., Suite 400
Washington, DC 20006
202.955.0095
lwindham@becketlaw.org
whaun@becketlaw.org
nreaves@becketlaw.org

Kimberly Pendrick (P60348)
Tonya Celeste Jeter (P55352)
Assistant Attorneys General
Attorneys for Defendants
3030 W. Grand Blvd., Ste 10-200
Detroit, Michigan 48202
313.456.0200
pendrickk@michigan.gov
jetert@michigan.gov

_____/

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

Tonya C. Jeter
Kimberly K. Pendrick
Assistant Attorneys General
Attorneys for Defendants
Civil Rights and Election Div.
3030 W. Grand Blvd., 10th Floor
Detroit, MI  48202
313.456-0067
jetert@michigan.gov
P55352
pendrickk@michigan.gov
P60348

Dated:  June 16, 2023

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.     To establish standing, a party must show injury in fact, not just a
       generalized grievance against governmental conduct, and as for a First
       Amendment claim, a party must show a chilling effect that is actual
       and imminent, not just a subjective allegation of chilled speech.  Here,
       Plaintiff relies on mere conjecture that someday in the future it may be
       investigated, prosecuted, or subjected to an enforcement action based
       on its religious beliefs under the amended Elliott-Larsen Civil Rights
       Act.  Has Plaintiff met the standing requirements to bring its First
       Amendment claims?

2.     The ripeness doctrine is designed to ensure that the jurisdiction of the
       federal courts is limited to actual cases and controversies, not
       premature, abstract disagreements that may not occur, and while
       ripeness is somewhat relaxed in the First Amendment context, there
       nevertheless must be a credible fear that the anticipated action will
       occur.  Here neither Attorney General Nessel, Executive Director
       Johnson, nor any of the Commission members have interfered with
       Plaintiff's church autonomy or business operations, let alone
       threatened to investigate, prosecute, or take any enforcement action
       against Plaintiff because of its religious beliefs, policies, or practices.
       Are any of Plaintiff's claims ripe for judicial resolution?

3.     The issuance of declaratory relief rests within the sound discretion of
       the Court, where such relief would settle the controversy, serve a
       useful purpose, or provide for a better or more effective remedy.  Here,
       declaratory relief would not settle the present controversy, and the
       state has an interest in the continued enforcement of its civil rights
       laws.  Should this Court deny Plaintiff's request for declaratory relief?

# TABLE OF CONTENTS

Page

Concise Statement of Issues Presented .......................................................................... i

Table of Contents ............................................................................................................ ii

Argument ........................................................................................................................ 1

I.    Plaintiff lacks standing to bring its pre-enforcement challenge where it
      has not sufficiently alleged an injury in fact. .................................................... 2

      A.    The Elliott-Larsen Civil Rights Act does not expressly or
            arguably proscribe religious organizations from engaging in
            activity that would be protected by the First Amendment..................... 2

      B.    Plaintiff has not shown a credible threat of enforcement...................... 7

      C.    A determination that Plaintiff lacks standing would not cause
            any constitutional conflicts. .................................................................. 12

II.   Plaintiff's claims are not ripe for pre-enforcement review because they
      have not shown a credible threat of enforcement. ............................................ 14

III.  Plaintiff is not entitled to declaratory relief. .................................................... 15

Conclusion and Relief Requested .................................................................................. 17

Certificate of Service..................................................................................................... 17

# ARGUMENT

Plaintiff's response to Defendants' motion to dismiss primarily focuses on standing and ripeness, arguing it has shown a credible threat of enforcement sufficient to pursue a pre-enforcement challenge.  But Plaintiff offers only generalized grievances uncorroborated by any *actual* facts or any actual Michigan caselaw interpreting the Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101, *et seq.* (as amended), as "putting St. Joseph to a choice: surrender its Catholic beliefs on human sexuality or be subject to lawsuits and penalties." (ECF No. 47, PageID.881.)  As a result, Plaintiff bases its enforcement presumption claim on a recent complaint filed with the Department against a Catholic charity by a private citizen and the open investigation based on the current interpretation of the ELCRA in the *Rouch World* case.  (ECF No. 47, PageID.918-919.)  Both, however, involve dissimilar entities, dissimilar facts, or dissimilar laws to those in Plaintiff's Complaint.

Further, caselaw does not support the existence of Plaintiff's argued "presumption."  Rather, pre-enforcement actions are permitted only where a plaintiff demonstrates certain factors are met.  This includes demonstrating a plausible, credible threat of enforcement of the challenged law.  Here, the facts and law do not demonstrate that any *credible* threat of enforcement exists.  While Plaintiff oversimplifies the pre-enforcement analysis, it ultimately fails to allege any facts that plausibly demonstrate a credible threat of enforcement against it.

Plaintiff thus lacks standing to bring this action.  And for similar reasons its claims are also unripe.  Where these foundational elements of an action are not met, Defendants' motion should be granted.

## I.  Plaintiff lacks standing to bring its pre-enforcement challenge where it has not sufficiently alleged an injury in fact.

To establish an injury in fact in the pre-enforcement context, Plaintiff's complaint must plausibly allege, among other factors, that it's alleged course of conduct is arguably proscribed by the challenged statutes, and that if Plaintiff pursues the alleged course of conduct, there is a credible threat that Defendants will pursue enforcement under the challenged statute, here the ELCRA.  See *Kentucky v. Yellen*, 54 F.4th 325, 336 (6th Cir. 2022) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014).)

### A.  The Elliott-Larsen Civil Rights Act does not expressly or arguably proscribe religious organizations from engaging in activity that would be protected by the First Amendment.

Plaintiff has repeatedly indicated in its response that Defendant admits the ELCRA is applicable to it, but woefully distorts the context.  The ELCRA does broadly apply to all Michigan employers and places of public accommodation. However, Plaintiff chooses to ignore Defendants assertion that while the ELCRA is applicable to Michigan employers and places of public accommodation, its provisions "do not facially proscribe Plaintiff from exercising any constitutionally protected religious rights[.]"  (ECF No. 44, Motion to Dismiss Brief, PageID.838.) The ELCRA does not proscribe activity otherwise protected by the First

Amendment.  Indeed, this Court recognized as much in the related case *Christian Healthcare Centers v. Nessel et al.*, noting that the ELCRA does not "facially fail[] to recognize religious freedoms like those asserted by [the plaintiff][.]"  (Case No. 22-cv-787, ECF No. 28, PageID.871.)

The amended ELCRA retains all its statutory provisions, which make clear that the Act does not infringe on a religious organization like St Joseph's ability to exercise its religious rights under the First Amendment.  For example, the amended ELCRA continues to prohibit discrimination by a place of public accommodation "[e]xcept where permitted by law."  Mich. Comp. Laws § 37.2302.  This language includes consideration of constitutional law. *Michigan Dept. of Civil Rights ex rel. Forton v. Waterford Tp. Dept. of Parks & Recreation*, 387 N.W.2d 821 (Mich. 1986). The construction provision of the amended ELCRA, which applies to employment, public accommodations, and educational institutions, specifically provides that it "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act."  Mich. Comp. Laws § 37.2705(1).  These protections—applicable to religious entities whose beliefs are also protected as a civil right—were not removed or altered in the amendment to the Act.  As a result, the amended ELCRA has not changed the civil rights protections for religious institutions in Michigan.  Thus, Plaintiff's assertion that the amended ELCRA does not provide for protections for religion is incorrect.  (ECF No. 47, PageID.889, 890, 913.)  While the legislature may have decided at this

juncture not to revise or add any additional provision for religious exemptions, they did not remove the protections already contained therein.

And contrary to Plaintiff's claim that the amended ELCRA will be adversely applied to St. Joseph as an employer, Michigan courts *have* interpreted the ELCRA in conjunction with applicable religious freedoms. (*Id.*, PageID.891-892, 901-902.) *See*, *e.g.*, *Weishuhn v. Catholic Diocese*, 756 N.W.2d 483 (Mich. Ct. App. 2008); *McLeod v. Providence Christian Sch.*, 408 N.W.2d 146 (Mich. Ct. App. 1987); *Assemany v. Archdiocese of Detroit*, 434 N.W.2d 233 (Mich. Ct. App. 1988). *See also*, *Ciurleo v. St. Regis Parish*, 214 F. Supp. 3d 647 (E.D. Mich. 2016). These cases demonstrate that religious protections are considered in enforcing the provisions of the ELCRA.

Plaintiff cites to two cases outside of the Sixth Circuit to stand for the proposition that it only needs to demonstrate the conduct is arguably proscribed by the ELCRA—not "in fact" proscribed. *See Picard v. Magliano,* 42 F.4th 89, 98 (2d Cir. 2022) and *Turtle Island Foods, S.P.C. v. Strain,* 65 F.4th 211, 218 (5th Cir. 2023). Defendant agrees the test is "arguably proscribed", (ECF No. 44, PageID.836-840), but these cases are distinguishable. *Picard* involved a plaintiff who wished to picket at the courthouse, but a criminal statute prohibited picketing within 200 feet of the courthouse, and he had, in fact, been arrested. *Picard,* 42 F.4th at 94. *Turtle Island Foods* involved a company challenging a state act prohibiting false labeling of food where it used "meat-esque" words even though the labels prominently indicated the product was plant-based. *Turtle Island Foods,* 65

4

F.4th at 215.  However, Plaintiff herein cannot establish that the ELCRA even arguably proscribes its conduct where it asserts it possesses First Amendment religious freedoms and the ELCRA plainly provides for consideration of such. Courts "must presume a statute is constitutional and construe it as such, unless the only proper construction renders the statute unconstitutional." *Libertas Classical Ass'n v. Whitmer*, 498 F. Supp. 3d 961, 973 (W.D. Mich. 2020).

Further, Plaintiff alleges there is a presumption of enforcement when challenging a recently enacted statute despite this Court's finding in *Christian Healthcare* that no such enforcement presumption exists.  (ECF No. 47, PageID.910.)  However, even with an assumption the statute will be enforced, the entire crux of the State Defendant's standing and ripeness arguments is that there is no evidence that the current or amended ELCRA provides any indication that it would be enforced against a religious entity in violation of its religious freedom.

Finally, Plaintiff cites to *Dambrot v. Central Mich. Univ.*, 55 F.3d 1177 (6th Cir. 1995) and *Doe v. Univ. of Mich.*, 721 F. Supp. 852 (E.D. Mich. 1989), to argue that the Sixth Circuit has found overbroad policies are not "saved from a pre-enforcement First Amendment challenge simply because the policy also contains language claiming not to 'reach constitutionally protected [activity].'  (ECF No. 47, PageID.913-915.)  In *Dambrot,* a university coach was terminated for referring to basketball players using a derogatory racial term in violation of a university policy prohibiting verbal behavior subjecting individuals to an intimidating, hostile, or offensive education environment.  *Id.*  The Sixth Circuit held that "[o]n its face, the

5

policy reaches a substantial amount of constitutionally protected speech" because "[i]t is clear from the text of the policy that language or writing, intentional or unintentional, regardless of political value, can be prohibited upon the initiative of the university." *Id*. At 1182–83.  The policy was "sweeping and seemingly drafted to include as much and as many types of conduct as possible." *Id*. at 1182.  *Doe* similarly involved an anti-discrimination policy where the court noted that a state "may not prohibit broad classes of speech, some of which may indeed be legitimately regulable, if in so doing a substantial amount of constitutionally protected conduct is also prohibited." *Doe,* 721 F. Supp. At 864.

However, the ELCRA does not prohibit constitutionally protected speech, such as the expression in general of unpopular ideas.  *Burns v. City of Detroit (On Remand)*, 660 N.W.2d 85, 95-97 (Mich. Ct. App. 2002).  However, unlike the school policies in *Dambrot* and *Doe*, the ELCRA's language ensures it captures more prohibited conduct than it would capture constitutionally protected speech.  The ELCRA is designed to target "the prejudices and biases' borne against persons because of their membership in a certain class, and . . . to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases." *Radtke v. Everett,* 501 N.W.2d 155, 161 (Mich. 1993).  The ELCRA provides that "[t]he opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, sexual orientation, gender identity or expression, height, weight, familial status, or marital

status as prohibited by this act, is recognized and declared to be a civil right."  Mich.
Comp. Laws § 37.2102(1) (as amended).  Unlike the policy in *Dambrot* and *Doe,* the
ELCRA is not a statute designed to reach "a substantial amount of constitutionally
protected speech."  *Dambrot,* 55 F.3d at 1182–1183.

The amended ELCRA has added civil rights protections for individuals based
on sexual orientation and gender identity and expression, but it has maintained the
provisions that allow for consideration of other laws, including religious freedoms.
As a result, while Michigan undertakes appropriate efforts to ensure that its
citizens are free from discrimination, its laws recognize that there may be existing
limitations or exceptions to the ELCRA provisions for religious beliefs.

### B.    Plaintiff has not shown a credible threat of enforcement.

Plaintiff likewise cannot show a credible threat of enforcement.  This Court
reached the same conclusion in the related case *Christian Healthcare Centers v.
Nessel et al*., where the plaintiff alleged similar threats of enforcement regarding
the ELCRA.  (Case No. 22-cv-787, ECF No. 28, PageID.872-76.)  Here, as there,
Plaintiff's allegations of a credible threat are wholly speculative, and presume,
without evidence, that Defendants will not appropriately consider religious
exemptions provided by other laws and Plaintiff wholly ignores that the amended
ELCRA contains the same protections for civil rights guaranteed by law, which
would encompass the freedom of religion and free exercise.  (ECF No. 47,
PageID.881.)  Thus, in response to Defendant's motion to dismiss, Plaintiff proffers
a litany of conjectured worse-case scenarios about how *it* (Plaintiff) interprets the

ELCRA provisions could someday be interpreted by Defendants.  (*Id.*, PageID.903-904.)  But such suppositions do not establish that the ELCRA is violative of the federal constitution.  And federal courts have determined that fear that the government might take some future action, by itself, does not create an actual or imminent injury-in-fact for standing purposes.  *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

The Sixth Circuit utilizes the *McKay* factors to determine whether a threat of prosecution is credible, which are:

1. A history of past enforcement against the plaintiffs or others;

2. Enforcement warning letters sent to the plaintiffs regarding their specific conduct;

3. An attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate enforcement action; and,

4. The Defendants refusal to disavow enforcement of the challenged statute against a particular plaintiff.

*McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016).  Some combination of these factors is required.  *Id.*

*First*, Plaintiff cannot demonstrate any past enforcement of the ELCRA against St. Joseph or any other similar religious institution.  In fact, the amended ELCRA is not yet in effect.

Even under the current version of the ELCRA, Plaintiff fails to demonstrate any past enforcement against it or any other similar religious institution.  Plaintiff's reliance on the recent complaint filed against a charity affiliated with the Catholic

Church to support a claim of a history of enforcement is also misplaced.  (ECF No. 47, PageID.918-919.)  In the recently filed MDCR complaint, a Catholic charity is alleged to have violated housing laws, unlike St. Joseph.  Housing discrimination claims are generally governed by Article 5 of the ELCRA, Mich. Comp. Laws § 37.2501 *et seq*., and/or the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq*. Housing discrimination claims are dissimilar to other ELCRA claims given the overlap with the federal Fair Housing Act.

Similarly, Plaintiff's reliance on the continuing investigation of the *business* entity (a wedding venue) in the *Rouch World* complaint to claim St. Joseph faces a threat of enforcement is also misplaced.  (*Id*.)  That administrative complaint does not involve a church or religious school.  And, at this point, with regard to both matters, Defendants are simply investigating the complaints to determine if any actionable discrimination occurred.  Mich. Comp. Laws § 37.2602(c).  If the matters proceed past investigation, Defendants will have to consider  applicable First Amendment protections.

Plaintiff's suggestion that the mere existence of an administrative complaint and a request to respond to such a complaint violates religious freedoms or demonstrates that Defendants are poised to violate Plaintiff's religious rights is unfounded.  And, while Plaintiff refers to 73 investigations based on sexual orientation or gender identity discrimination, they do not allege that any of those 73 complaints were leveled against a church or a religious school, like St. Joseph.  (*Id*.) Hence, Plaintiff has not described any past enforcement of the ELCRA against it or

9

other churches or religious schools demonstrable of a credible threat of prosecution. While Plaintiff alleges that the number of sex discrimination complaints filed with the Michigan Department of Civil Rights has grown, it can only speculate whether any of those complaints involve a claim based on sexual orientation or gender identity and, if so, whether they are against a religious organization.

*Second*, Plaintiff has not alleged, let alone shown, that Defendants have sent warning letters to St. Joseph or other similar religious institutions threatening enforcement regarding the conduct outlined in its Complaint.

*Third*, contrary to Plaintiff's intimation, the statutory language in ELCRA that permits "a person alleging a violation," (*id*., PageID.921), to file a complaint does not, necessarily, make *enforcement* easier or more likely against St. Joseph or other religious institutions.  A person alleging a violation of ELCRA may file a complaint with the Department—but, the Department must undertake an investigation.  Mich. Comp. Laws § 37.2602(c).  The scope of an investigation, any determination that actionable discrimination occurred, and any determination to issue a charge will be shaped by the facts and applicable laws, including constitutional law which, again, the ELCRA incorporates.  Mich. Admin. Code R. 37.6.  *See*, *e.g*., Mich. Comp. Laws § 37.2705.

Plaintiff appears to argue that any administrative complaint or lawsuit against them, in and of itself, violates their religious freedoms, despite the fact that courts have considered religious freedoms in conjunction with Michigan's antidiscrimination provisions.  (*Id*., PageID.881, 929.)  Plaintiff has provided no

authority for their proposition that a religious entity is immune from an administrative complaint or lawsuit being initiated.  *See, e.g, Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) ("[R]eligious institutions [do not] enjoy a general immunity from secular laws, but [the First Amendment] does protect their autonomy with respect to internal management decisions that are essential to the institution's central mission.")  Michigan courts have rejected similar arguments as to the ELCRA under the First Amendment.  *See McLeod*, 408 N.W.2d at 151-53 (holding that ELCRA did not violate Establishment Clause.)  If a person files an administrative complaint or lawsuit against a religious entity, it can assert its religious freedoms, which then must be weighed against governmental interests based on the particular facts of each case.  *Assemany,* 434 N.W.2d at 236-237.  *See also Winkler v. Marist Fathers of Detroit, Inc.*, 901 N.W.2d 566, 575-76 (Mich. 2017) (Ecclesiastical abstention doctrine did not deprive circuit court of its judicial power to consider plaintiff's Persons With Disabilities Civil Rights Act claim "and dispose of it in a manner consistent with the guarantees of the First Amendment.)  Even parties that possess immunity, such as governmental entities or the judiciary, are not protected from the filing of administrative or court actions against them—but it is a defense of which they may avail themselves.

Finally, *fourth*, relative to disavowal, this case involves to what extent Defendants would enforce a future ELCRA claim against St. Joseph where the statutes specifically provide for consideration of other applicable laws.  But there is no actual set of facts here.  It is impossible for Defendants to disavow application of

11

a statute as comprehensive as the ELCRA to St. Joseph where the religious freedom inquiry would be so fact dependent.  *See, e.g., Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 174 (6th Cir. 2022) (determining that the fact that the police department had not "disavowed enforcement" of its Facebook Rule "does nothing to show that [the plaintiff] plans to engage in speech that might arguably fall within the rule").  Here, the ELCRA does not deny religious freedoms, rather those freedoms must be weighed on a case-by-case basis.  Disavowal is not applicable in this context.

Plaintiff fails to show any of the *McKay* factors weigh in their favor, and thus fails to demonstrate a credible threat of enforcement under the ELCRA.

### C.    A determination that Plaintiff lacks standing would not cause any constitutional conflicts.

Plaintiff's argument regarding a constitutional conflict puts the proverbial cart before the horse.  The State Defendants, while supporting the recent ELCRA amendments, are not legislators and did not enact the recent ELCRA amendments. Further, they have taken no action against St. Joseph in any attempt to decide matters "of faith and doctrine" or to "dictate or even to influence such matters. . ." *Our Lady of Guadalupe Sch*, 140 S. Ct. at 2060.  *Our Lady of Guadalupe Sch.,* upon which Plaintiff relies, involved two Catholic school elementary teachers who filed a lawsuit after being terminated alleging age discrimination.  The fact that the Catholic school eventually succeeded in the lawsuit, did not prevent the lawsuit from being filed and from the court considering whether a ministerial exception applied.  But the Court's finding that the ministerial exception applied to their

employment bound it to "stay out of employment disputes involving those holding
certain important positions with churches and other religious institutions." *Id.* at
2060.

Plaintiff cites to a host of cases involving a church's autonomy to make
leadership decisions, to pursue its educational mission, etc.  But, as stated above,
this analysis is premature where the State Defendants have not taken any action to
intrude on St. Joseph's religious freedoms.  The granting of Defendants' Motion to
Dismiss would be based on Plaintiff's lack of standing (or the lack of ripeness of its
claims.)  This does not result in any ruling impacting St. Joseph's employment and
educational decisions where no action has been taken in this regard.  Further, while
an employment BFOQ is currently available, the ELCRA does not mandate that an
employer apply for one.   "An employer may have a bona fide occupational
qualification on the basis of religion, national origin, sex, age, or marital status,
height and weight *without obtaining prior exemption from the commission*, provided
that an employer who does not obtain an exemption shall have the burden of
establishing that the qualification is reasonably necessary to the normal operation
of the business."  Mich. Comp. Laws § 37.2208.

Plaintiff's argument also demonstrates the breadth of what it is asking this
Court to decide.  It expects a ruling that the ELCRA is unconstitutional as applied
to it so it can cover every scenario including "family-student policies, the use of its
facilities, or how it can uphold Catholic identity in relation to 'shared time' teachers
and RESA staff."  (ECF No. 47, PageID.929.)  Even the cases upon which it relies do

not offer such broad-based protections.  For example, in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, a teacher diagnosed with epilepsy was fired by a Lutheran church and sued under the Americans with Disabilities Act (ADA).  565 U.S. 171 (2012).  While the Supreme Court held that the ministerial exception barred her ADA claim, it did not take a position on how the exception would apply to other types of employment suits.  "There will be time enough to address the applicability of the exception to other circumstances if and when they arise."  *Id.* at 196.  In short, Plaintiff is arguing a conflict where none presently exists.

## II.   Plaintiff's claims are not ripe for pre-enforcement review because they have not shown a credible threat of enforcement.

Plaintiff also argues its claims are ripe because the ELCRA proscribes the protected activities Plaintiff seeks to engage in, and that Defendants are chilling St. Joseph's religious exercise based on its perceived threat of enforcement.  (ECF No. 47, PageID.897, 922.)

Ripeness "shares a foundation in Article III's case-and-controversy requirement," *Miller v. City of Wickliffe*, 852 F.3d 497, 503 (6th Cir. 2017); *see also Doster v. Kendall*, 54 F.4th 398, 415 (6th Cir. 2022), and often "boil[s] down to the same question[.]"  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007).  As the Sixth Circuit has held, "a claim does not become ripe at the first whiff of governmental insensitivity or whenever a government official takes an adverse legal position against someone, even if one potential response is to curtail protected activities."  *Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505, 540 (6th Cir. 2006).

14

To demonstrate their claims are ripe, Plaintiff must show a credible fear of enforcement.  *Norton v. Ashcroft*, 298 F.3d 547, 544 (6th Cir. 2002).  But for the reasons argued above, Plaintiff has not shown a credible fear or threat that the Department and Commission Defendants will imminently take action to enforce the ELCRA against St. Joseph in any of its potential capacities, i.e., employer, educational institution, or public accommodation.  Additionally, Plaintiff presents no credible evidence that Attorney General Nessel, who does not enforce the ELCRA, is poised to pursue any action against St. Joseph.  As a result, for the reasons already stated in Defendants' principal brief (ECF No. 44), and here, Plaintiff's claims are unripe and must be dismissed.

## III.    Plaintiff is not entitled to declaratory relief.

Two of the requirements for declaratory relief involve whether the declaratory action would settle the controversy or serve a useful purpose in clarifying the legal relations in issue.  Plaintiff broadly argues that declaratory relief would "settle the key legal dispute between the parties."  (ECF No. 47, PageID.933.)  Plaintiff cites to *Cole v. City of Memphis,* a Tennessee District Court case wherein the Court issued a declaratory ruling finding that the City of Memphis's practice of having the police sweep Beale Street in the earning morning hours to remove pedestrians was unconstitutional.  108 F. Supp. 3d 593, 601 (W.D. Tenn., 2015).

Unlike this case, *Cole* involved an actual controversy related to an existing practice of the City of Memphis's police department.  Whereas here, as discussed

15

previously, Plaintiff lacks standing and its claims are not ripe.  Yet Plaintiff seeks a broad declaration that the First Amendment protects its "ability to maintain religious policies and codes of conduct for employees of any kind, students, and families, and guarantees St. Joseph's freedom to participate equally in public benefit programs without discrimination against its religious status, conduct, or autonomy, or its free exercise, free speech, association, or assembly rights."  (ECF No. 40, PageID.716-717.)  The court in *Cole* noted that the Supreme Court has cautioned that "the federal courts . . . do not render advisory opinions.  For adjudication of constitutional issues, concrete legal issues, presented in actual cases, no abstractions are requisite."  *Id.* (citing *United Pub. Workers of Am. (C.I.O.) v. Mitchell,* 330 U.S. 75, 89 (1947) (cleaned up).

Relative to whether it would resolve the relationship between the parties, the Sixth Circuit has treated the relationship between the parties as a separate and distinct factor from the initial controversy factor.  *Mass. Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759 F. App'x 431, 438 (6th Cir. 2018), citing *Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 279 (6th Cir. 1990.)  Plaintiff has demonstrated no uncertainty regarding the relationship of the parties.  The legal relationship test frequently is an issue in determining insurance coverage issues, such as in *Mercier.* No such issues are present here.  Plaintiff's request for a declaratory judgment is thus not supported by the facts and law and this Court should exercise its discretion and deny relief.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (The Act confers

on the "federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.")

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above and in Defendants' principal brief in support of their motion to dismiss, (ECF No. 44), Defendants respectfully ask this Court to dismiss all claims under Fed. R. Civ. P. 12(b)(1).

Respectfully submitted,

*s/Tonya Celeste Jeter*
Tonya C. Jeter
Kimberly K. Pendrick
Assistant Attorneys General
Attorneys for Defendants
Civil Rights and Election Div.
3030 W. Grand Blvd., 10th Floor
Detroit, MI  48202
313.456-0067
jetert@michigan.gov
P55352
pendrickk@michigan.gov
P60348

Dated:  June 16, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2023, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Tonya Celeste Jeter*
Tonya Celeste Jeter (P55352)
Assistant Attorney General

17